## CHARLIE EDWARD BROWN *v.* STATE OF MARYLAND

[No. 185, September Term, 1967.]

---

*Decided February 7, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Stuart E. Hirsch,* with whom was *Nelson R. Kandel* on the brief, for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *I. Elliott Goldberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty by a general verdict under a three count indictment charging possession of a narcotic drug,

control of a narcotic drug and possession of narcotic paraphernalia in the Criminal Court of Baltimore by the court sitting without a jury and sentenced to imprisonment for a term of three years.

At the trial a "burned" bottle cap, an eye dropper (referred to as an improvised syringe) and a hypodermic needle, all characterized as narcotic paraphernalia, were offered by the State and admitted in evidence over the appellant's objection. A report of the examination and analysis of the paraphernalia by a United States chemist, admitted without objection, showed that the bottle cap contained traces of heroin hydrochloride but no "prohibited narcotic drugs were detected" with respect to the eye dropper and hypodermic needle. The appellant contends on appeal that the narcotic paraphernalia was "illegally obtained" and, therefore, "erroneously admitted into evidence."

Officer John Sewell, a member of the Narcotic Unit of the Baltimore City Police Department, while in the vicinity of the intersection of Pennsylvania Avenue and Smithson Street, observed several known drug addicts and peddlers standing on the corner. He went into a bar located on the northwest corner of that intersection and proceeded directly to the men's rest-room for no other reason than to make a routine check. Someone, unknown to the officer, was leaving the rest-room as the officer entered. The toilet in the rest-room was within a booth, partitioned off from the rest of the room. The entrance to the booth was through a doorway on which was hung a "swinging" door which the officer estimated to be about 5 feet 5 inches high. He saw the appellant, whom he knew to be a drug addict, standing in the booth. Going close to the door of the booth "I just stuck my head over. I didn't have to tip toe, or get up on my toes." [1] The officer was "about 6 feet tall." By sticking his head over the door the officer saw the appellant "fixing his trousers * * * he had one hand somewhere on his trousers and * * * one hand was coming over the paraphernalia, but I didn't actually see it in his hands." The paraphernalia was on

---

1. The transcript of the trial reads that the officer said "* * * I would have to get that close to the door [indicating]" but the indication is not explained.

top of the commode on the opposite side from where the handle used to flush the bowl was located, but the officer did not see the appellant place it there. The officer said, "Well, Mr. Brown," and the appellant said, "Oh my God, I shouldn't have taken this from (given a name the officer did not recall). You got me this time." The officer seized the paraphernalia and arrested the appellant. The mother of the appellant, testifying on his behalf, said that about two months before the trial he had been in Springfield State Hospital and at his request she got him admitted to "Lexington Kentucky for treatment". He was there 30 days. She attempted to get him readmitted but he did not want to go back, stating, about a week before his arrest, that he was "well now". Shortly after his arrest she was informed by the authorities at Lexington that they would again accept him.

If the seizure of the evidence objected to was not unreasonable, it was properly admitted. The seizure of the evidence would not be unreasonable, even though without a search warrant, if the arrest of the appellant was lawful, for then the seizure would be an incident to a lawful arrest. *David v. State,* 1 Md. App. 666. The arrest of the appellant would be lawful, even though without a warrant of arrest, if the arresting officer had probable cause to believe that a felony had been committed and that the appellant had committed the felony, *Boone v. State,* 2 Md. App. 479, or if the appellant committed a misdemeanor in the presence of the arresting officer, *Scott v. State,* 1 Md. App. 481.[2] But the facts and circumstances showing probable cause must come lawfully within the knowledge of the officer, *Johnson v. State,* 2 Md. App. 300, and the commission of the misdemeanor in the officer's presence must be lawfully observed by him. *Dailey v. State,* 234 Md. 325; otherwise the arrest will not support the introduction of the evidence.

It is clear from the testimony of the officer that he saw the narcotic paraphernalia and the actions of the appellant by stick-

---

**2.** Unlawful possession and unlawful control of a narcotic drug, Md. Code (1967 Repl. Vol.) Art. 27, § 277) are felonies. Unlawful possession of narcotic paraphernalia (Md. Code, *supra,* Art. 27, § 297) is a misdemeanor. Md. Code, *supra,* Art. 27, § 300 (a) and (b).

ing his head over the door to the toilet stall. Thus there was a physical intrusion into the area and the question is whether this constituted a trespass or unlawful entry so as to make the observation unlawfully obtained. This question must be resolved, not upon the technicality of a trespass as a matter of State or local law but upon the reality of an actual intrusion into a constitutionally protected area. See *Silverman v. United States,* 365 U. S. 505. We believe that a person who enters an enclosed stall in a public toilet, with the door closed behind him, is entitled, at least, to the modicum of privacy its design affords, certainly to the extent that he will not be joined by an uninvited guest or spied upon by probing eyes in a head physically intruding into the area. No less than a person in a business office (*Silverthorne Lumber Co. v. United States,* 251 U. S. 385), in a friend's apartment (*Jones v. United States,* 362 U. S. 257; *Dorsey and Gladden v. State,* 2 Md. App. 40), or in a taxicab (*Rios v. United States,* 364 U. S. 253), a person in an enclosed stall in a public toilet may rely upon the protection of the Fourth Amendment. The nature of the place, the type of criminal activities that can and do occur in it, the ready availability therein of a receptacle for disposing of incriminating evidence and the right of the public to expect that the police will put a stop to its use as a resort to crime are not sufficient to permit the search under the circumstances here present. See *Bielicki v. Superior Court,* 57 Cal. 2d 602, 371 P. 2d 288; compare *Smayda v. United States,* 352 F. 2d 251 (1965). Nor may the search be held reasonable because the officer knew that the appellant was a narcotic addict and found him in a general area frequented by other addicts and drug peddlers. We know of no Supreme Court decision or decision of this State which sustained a search upon the sole ground that officers reasonably expected to find evidence of a particular crime, even though they voluntarily confined their activities to the least intrusive means consistent with that end. See *Davids v. State,* 208 Md. 377.

We are compelled to hold that, in the instant case, the arrest of the appellant was unlawful for the reason that the knowledge of the facts and circumstances showing probable cause with regard to the felony and the observation of the commission of the misdemeanor were come by as a result of a trespass by

the arresting officer—a physical intrusion into a constitutionally protected area.[3] The arrest being unlawful, the seizure of the evidence was unreasonable and it was error to admit it in evidence.

The appellee suggests that the evidence was properly seized under the provisions of Md. Code (1957) Art. 2B, § 190 authorizing any peace officer of the county or city in which the place of business is located to inspect and search, at all hours, without a warrant, any premises in which alcoholic beverages are authorized to be kept or sold under a duly issued license. Under this statute a tavern owner's assent to inspection and search of the premises is valid, but it does not authorize officers to search patrons found therein. *Davids v. State, supra.* Further the right of search and seizure granted by the statute is limited to premises and property in the possession and control of the owner and licensee and "premises" means that part and only that part of the premises in which alcoholic beverages are sold as in the possession of the owner or licensee. *Miller v. State,* 174 Md. 362; cf. *Tucker v. State,* 244 Md. 488. We think that the toilet stall was, under the circumstances existing, without the limitation of the statute at the time of the sei-

---

3. We are aware that the Supreme Court in *Katz v. United States,* 389 U. S. 347, 88 Sup. Ct. 507, 19 L. Ed. 2d 576 (1967), concerned with the admissibility of evidence of telephone conversations overheard by FBI agents who had attached an electronic listening and recording device to the outside of a public telephone booth, concluded that "* * * the underpinnings of *Olmstead* (*Olmstead v. United States,* 277 U. S. 438) and *Goldman* (*Goldman v. United States,* 316 U. S. 129) have been so eroded by our subsequent decisions that the "trespass" doctrine there enunciated can no longer be regarded as controlling," as the Fourth Amendment protects people and not simply "areas" against unreasonable searches and seizures. But while the "trespass" doctrine may no longer be controlling so as to permit the admission of evidence on the ground that when it was obtained there was no physical intrusion into a constitutionally protected area, we do not construe *Katz* as overruling the rule that evidence is *inadmissible* because obtained by a physical trespass or actual intrusion into a constitutionally protected area. As we think that *Katz* does not preclude and is not inconsistent with our holding we do not consider its applicability to the instant case.

zure and that the circumstances of the seizure were tantamount to a search of a patron. We note also that although the premises are referred to in the testimony as the "Alhambra Bar", there is no evidence that alcoholic beverages were authorized to be kept or sold therein under a duly issued license. The statute does not apply to premises on which alcoholic beverages are sold without a license. *Turner v. State,* 195 Md. 288. The suggestion of the appellee is without merit.

*Judgment reversed; case remanded for a new trial.*