STATE OF HAWAII, Plaintiff-Appellee, *v.*
RONALD Y. C. DELMONDO, Defendant-Appellant

No. 5299

JULY 13, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

On July 1, 1971, officer Leu of the Honolulu Police Department was on his assigned patrol at Waikiki. During the course of his duties he used the urinal at the International Market Place in Waikiki and while using the urinal he heard two voices coming from an adjoining toilet stall. The conversation concerned money and prices. The officer approached the toilet stall and pushed on the door. The door was not latched, and it opened, whereupon the officer observed the defendant sitting on the toilet with his pants on and leaning over several orange pills or capsules on the floor. A second party in the stall was bending close to the floor with his fist full of U.S. currencies. The defendant, in reacting to the opening of the door, picked up some of the pills.

Then, while frisking the defendant for weapons, the officer discovered that the defendant's left fist was tightly

closed. He pried it open and recovered a red capsule. The defendant was charged with the unlawful possession of a harmful drug.

The defendant moved in the trial court to suppress the evidence on the ground that officer Leu's conduct constituted an unreasonable search and seizure. The motion was denied. Following a trial, the defendant was found guilty and he has appealed from the judgment and sentence of the court.

The sole issue before us is whether the trial court erred in denying the motion to suppress the evidence. Thus, the basic issue to be decided is whether the arresting officer possessed the requisite probable cause to conduct the warrantless search leading to the defendant's arrest.

Even assuming that a person in a public toilet stall, using it as did defendant here, is entitled to a reasonable expectation of privacy while therein, a warrantless search of that area, and a frisk of defendant's person, are not unconstitutional acts where there is probable cause to believe that a crime is being, was, or is about to be committed.

Much is made by the defendant of the point that there was no probable cause for the search and seizure that occurred here, and to buttress this conclusion the relevant portions of the transcript are quoted to the effect that officer Leu investigated only because he was "curious."[1] Thus, the defendant argues that the officer disavowed having "probable cause" to act as he did.

However, the officer's statements on this issue are not totally dispositive of the matter. "Probable cause" is determined *not* by a subjective standard (*i.e., not* by the

---

[1] "Q Now, did you feel—I'm trying to get at why you opened that door. Did you feel this was in line with your regular police work or what?

"A I—it's pretty hard to say, sir. The only reason I opened the door because, like I said, there was a conversation concerning money and so forth, and that it was pretty odd having two people in that area, so more or less to satisfy my curiosity, I opened the door and—."

officer's personal opinions) but *by a "reasonable man" (or objective) standard.* The use of an objective standard has been black letter law since at least *Carroll* v. *United States,* 267 U.S. 132 (1925), and has been adopted by this court. *State* v. *Texeira,* 50 Haw. 138, 433 P.2d 593 (1967). The definition given in the *Carroll* case, *supra,* and adopted by this court in a decision written by Justice Levinson in *Texeira, supra* (at 142), is that officers have "probable cause" when:

> [T]he facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime was being committed]. *Carroll* v. *United States,* 267 U.S. 132, 162 (1925).

As similarly stated by *Henry* v. *United States,* 361 U.S. 98, 102 (1959): "probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." Then as stated by the *Henry* case, the inquiry for the appellate court must be whether "prudent men in the shoes" of the police officer would have perceived enough to permit them to believe that the suspect was violating the law.

Also, what is known or perceived by an officer to give him a probable cause to make an arrest or a search need not amount to evidence sufficient to convict. This court in the *Texeira* case, *supra,* at pages 142-43 said:

> It is clear "that the term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation," *Locke* v. *United States,* 11 U.S. (7 Cranch) 339, 348 (1813), *accord, Jones* v. *United States,* 362 U.S. 257, 270 (1960). The Supreme Court succinctly summarized the difficulty we face in determining when an officer has probable cause to make an arrest.

In that case this court accordingly adopted the rule of *Brinegar* v. *United States,* 338 U.S. 160, 176 (1949), where the United States Supreme Court stated that the long-prevailing standards on probable cause:

> . . . seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

It is to be noted that this court in *Texeira, supra,* page 144, also recognized the particular need for fast action when there is probable cause to suspect possession of narcotics.

Based on the standards and considerations established by this court in the *Texeira* case, officer Leu, as a reasonable man, had probable cause to make a warrantless search, as he heard *loud talking* about *money and prices* emanating from a toilet stall containing one bowl occupied by two persons. As it was stated in *United States* v. *Smith,* 293 A.2d 856, 858 (D.C. Ct. App. 1972) ". . . we cannot say it was unreasonable for the officers to conclude that illegal conduct of some sort was in progress."

In the *Smith* case the officer's attention was caught by his noticing "underneath the door of one of the pay toilet stalls two pairs of legs dressed in male attire." 293

A.2d at 857. That *sight and that alone,* outside of the background of other criminal activity in the area, was all that the officer perceived before the search was begun.

The cases cited by the defendant are distinguishable from this case and are inapposite. In *Bielicki* v. *Superior Court of L.A. County,* 57 Cal.2d 602, 21 Cal. Rptr. 552, 371 P.2d 288 (1962), the police had regularly observed all the occupants of toilet stalls through a pipe from the roof, looking for illegal activities and thus, the search of the stalls began before perceiving any criminal activity — in other words the search was started without probable cause.

In *Brown* v. *State,* 3 Md. App. 90, 238 A.2d 147 (1968), the arresting officer stuck his head over the toilet stall door, and the reason given for such intrusion was that the occupant of the stall was a known narcotics addict. This knowledge was insufficient to provide the officer with probable cause to believe that a crime was being committed.

In *Uva* v. *State,* 124 Ga. App. 486, 184 S.E.2d 200 (1971), the officer testified that he had heard a young man tell the defendant "No, man, I don't want to buy anything," at a public dancehall, after which the officer searched the defendant and found drugs upon him. The court held that no probable cause for the defendant's arrest existed when the search was made and that the search was unlawful.

As stated above those cases are distinguishable from this case. The record of this case establishes that the officer had probable cause to fling open the door and "it has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris* v. *United States,* 390 U.S. 234, 236 (1968).

Thus, it is clear to us that having seen the red capsules on the floor, the officer had probable cause to effectuate

an arrest. Officer Leu took custody of the defendant and his cohort by obliging them to leave the toilet stall, stand against a wall, and generally to remain subject to his directions. This type of action, despite the absence of the magic words ("I place you under arrest" etc.), is an arrest, where the defendant clearly understands that he is not free to go. *People ex. rel. Winkle* v. *Bannan,* 372 Mich. 292, 125 N.W.2d 875, 879-80 (1964), *appeal dismissed* and *cert. denied* 379 U.S. 645 (1965). The search that revealed that the suspect's left hand held still another capule was, thus, a search incident to valid arrest,[2] and is therefore also valid.

Affirmed.

*David S. Hobler,* Deputy Public Defender (*Donald K. Tsukiyama,* Public Defender, with him on the briefs) for defendant-appellant.

*Reina A. Grant,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with her on the brief), for plaintiff-appellee.

---

DISSENTING OPINION OF LEVINSON, J.,
WITH WHOM MARUMOTO, J., JOINS

I dissent. The constitutional standard for probable cause, as delineated by the majority, has not been met on the facts of this case, and the motion to suppress therefore should have been granted.

The majority opinion reflects numerous errors of both fact and law.

---

[2] Even assuming here that there was no arrest because of a failure to use specific language and that therefore the search was *prior* to some later act of arresting, it is not illegal or objectionable. As long as there is an independently established probable cause for an arrest, a search immediately preceding arrest is no greater invasion of a person's security and privacy than a search following arrest. In fact, a search prior to arrest (for probable cause established by other information) may be preferable to a search after arrest, because if the prior search reveals a mistake as to probable cause, the suspect is spared actual arrest. *Cf. People* v. *Simon,* 45 Cal.2d 645, 290 P.2d 531, 533 (1955).

First, the facts: Officer Leu opened the stall door in response to what the majority characterizes as *"loud talking* about *money and prices."* The conversation did not even arouse the curiosity of Edward Ildefonso, the security guard for the nearby Beachcomber Hotel, who happened to be accompanying Officer Leu. Moreover, the majority emphasizes the particular need for fast action when there is probable cause to suspect possession of narcotics, but conveniently omits the fact that Officer Leu had never before made a drug arrest, in addition to the fact that he failed to testify to any suspicion of narcotics whatsoever at the time he opened the door.

The majority's errors of law are equally serious.

The issue of a toilet stall occupant's reasonable expectation of privacy is mentioned only parenthetically, in spite of its undeniable importance. The constitutional considerations which give rise to this protection derive from the Fourth Amendment of the United States Constitution[1] and article I, section 5 of the Hawaii Constitution.[2]

A key case in this area is *Katz* v. *United States,* 389 U.S. 347 (1967), in which the Supreme Court held that the government's eavesdropping on the defendant while he was in a telephone booth violated the privacy upon which he justifiably relied and thus constituted a search and seizure within the meaning of the Fourth Amendment. The Court rejected its prior physical trespass doctrine and said in now-famous words that the Fourth

---

[1]The Fourth Amendment of the United States Constitution reads:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[2]Article I, section 5 of the Hawaii Constitution reads:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

Amendment protects people and not simply areas. 389 U.S. at 353.

> Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures. [389 U.S. at 359]

This court has had occasion to consider the problem of freedom from unwarranted governmental intrusion in past cases and, needless to say, we have followed the *Katz* rationale. In *State* v. *Matias,* 51 Haw. 62, 451 P.2d 257 (1969), we held that an overnight guest of a tenant was granted a right to privacy on the premises of his host's apartment notwithstanding his host's consent to a search by police, stating that "a person has a 'halo' of privacy wherever he goes and can invoke a protectable right to privacy wherever he may legitimately be and reasonably expect freedom from governmental intrusion." 51 Haw. at 65-66, 451 P.2d at 259. Likewise, in *State* v. *Dias,* 52 Haw. 100, 470 P.2d 510 (1970), we held that a passageway located on private property between two apartment houses was a place of such character as to give reasonable rise to expectations of privacy. 52 Haw. at 106-07, 470 P.2d at 514.

I think that the fact that voices or other sounds emanating from a toilet stall can be heard outside does not automatically deprive occupants of the right not to be seen any more than carrying on a conversation inside a glass enclosed telephone booth where occupants can be seen outside automatically deprives occupants of the right not to be heard by electronic devices. Nor does the fact that an occupant of a free toilet stall is willing to share it with one other person deprive him of the right to exclude all other persons.

An examination of cases from other jurisdictions involving toilet stalls yields an identical conclusion, even prior to *Katz. Bielicki* v. *Superior Court of Los Angeles County,* 57 Cal. App. 2d 602, 21 Cal. Rptr. 552, 371 P.2d 288 (1962).

The post-*Katz* cases, needless to say, are not at variance; they simply possess the added force of *Katz* of which to avail themselves. Most pertinent is *Brown* v. *State*, 3 Md. App. 90, 94, 238 A.2d 147, 149 (1968) in which the police officer saw narcotic paraphernalia and the defendant's actions by peering over the door into the stall. Reversing the conviction, the court stated:

> We believe that a person who enters an enclosed stall in a public toilet, with the door closed behind him, is entitled, at least, to the modicum of privacy its design affords, certainly to the extent that he will not be joined by an uninvited guest or spied upon by probing eyes in a head physically intruding into the area.

In addition to underestimating the importance of the appellant's reasonable expectation of privacy, the majority has misapplied its own probable cause standard to the facts. Judged by any objective standard, the conversation overheard by Leu, even though taking place in a closed toilet stall, did not amount to probable cause for believing that any illegal activity was going on in the toilet stall.

While I do not disagree with the definition of probable cause in terms of an objective test, the majority completely discounts the arresting officer's own testimony, despite its statement to the contrary. Officer Leu testified as follows on cross-examination, in addition to his statement on direct examination quoted by the majority:

> Q So it was primarily your curiosity, not that you believed there was any—anything illegal, any crime being conducted or committed within the commode area, isn't that right?
>
> A That is correct, sir.

The officer, by his own admission, clearly did not think that anything illegal was happening in the stall at the

time he decided to investigate further and, even if his statements are not totally dispositive of the matter, there can be no better evidence of probable cause than the recollection of the arresting officer as to what he saw and thought. Yet the majority, under the guise of an objective standard, would have us believe that this officer possessed probable cause when in fact he testified that he did not.

Moreover, under the objective test, what illegal conduct was suggested by the mere presence of two occupants in the same toilet stall talking about money and prices? The majority cites *United States* v. *Smith*, 293 A.2d 856 (D.C. Ct. App. 1972) in support of the proposition that observation of the legs of two men under the door of a toilet stall constitutes probable cause. That case is readily distinguishable, however, because, as the court stated and the majority here omits, the men gave the appearance of cheating the coin mechanism. The case at hand does not involve a pay toilet, of course. The arresting officer did not have probable cause to believe, before he opened the door, that the two occupants did not have a legitimate reason for their presence together in the stall, such as discussing business where they could not be seen; whatever the reason, we cannot presume illegality in view of the officer's failure to refer to any crime about which he became suspicious prior to investigating further.

The facts in *Uva* v. *State*, 124 Ga. App. 486, 184 S.E.2d 200 (1971), are much more analogous. There the court held that a police officer did not have probable cause to arrest the defendant when, during a check of an area where previous narcotics arrests had been made, the officer overheard the defendant, whom he had never seen before, say something to another person who responded "No, man, I don't want to buy anything." The facts of the case before us reveal that Officer Leu heard an even less suspicious conversation.

The majority seems to be attempting to distinguish

between a search and an investigation, saying, in substance, that the same conduct by a police officer which is forbidden in making a search is proper if done in investigating. For constitutional purposes, there can be no difference between the two. Likewise it is meaningless to say that the pills were in plain view after the door was opened or that they were seized incident to a lawful arrest, when there was no right to open the toilet stall door in the first place, just as there was no right to attach a listening device to the telephone booth in *Katz*.

The search in the present case was a quintessential "manifestly exploratory" one prompted by general curiosity, *People* v. *Superior Court of Yolo County*, 3 Cal. 3d 807, 831, 91 Cal. Rptr. 729, 745, 478 P.2d 449, 465 (1970), and as such it is intolerable under the Fourth Amendment of the United States Constitution and article I, section 5 of the Hawaii Constitution.

I would therefore reverse.