STATE OF HAWAII, Plaintiff-Appellee, *v.* TERRANCE WILLIAM BIGGAR, Defendant-Appellant

NO. 10694

(CRIMINAL NO. 84-0351)

APRIL 3, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

Defendant-Appellant Terrance Biggar appeals from a jury conviction in the circuit court for promoting a dangerous drug in the first degree in violation of Hawaii Revised Statutes ("HRS") § 712-1241(1)(a)(i). Appellant claims that the court erred in denying his

 

motion to suppress evidence by finding that a police detective's surveillance of his activities inside a closed toilet stall did not violate his reasonable expectation of privacy. We reverse.

## I.

On September 24, 1984, a United Airlines ticket agent called Honolulu police detective Dennis Peterson[1] about what he considered to be a suspicious ticket purchase by Appellant. Appellant had paid cash for two one-way tickets from Vancouver, Canada to Honolulu via San Francisco with a connecting flight to Kona. The tickets were for a P. Biggar and an L. Robinson.

Detective Peterson learned from the Canadian police that Appellant had an arrest record for a narcotics violation and that a Percy Biggar had been denied entry into the United States that day. When Percy Biggar and a Lorna Robinson arrived in Honolulu, Detective Peterson and customs agents detained them at the airport.

Detective Peterson then went to the Mid Pacific Airlines counter, where he found Appellant asking about Percy Biggar and Lorna Robinson. Appellant was using the name "Manley." Detective Peterson identified himself and told Appellant that his friends were being detained because of their possible illegal entry. Appellant asked to speak with them, and Detective Peterson agreed to take him to the detention area. Detective Peterson also told Appellant that he matched the description of the suspicious ticket purchaser. Appellant denied his involvement and agreed to accompany Detective Peterson to the United counter to be identified.[2]

On the way, Appellant asked to use the restroom. Detective Peterson testified that the request made him "very suspicious," apparently because Appellant had asked him to watch his guitar case and because Appellant first stated that he had to urinate and later stated that he had

---

[1]Detective Peterson was assigned to the Drug Enforcement Administration airport task force.

[2]The lower court found that this initial questioning was a brief investigatory stop. It held that there was no probable cause to arrest Appellant, but that Detective Peterson was "merely investigating the defendant's possible involvement with Percy Biggar and L. Robinson."

to defecate. Appellant became "very nervous" when the detective followed him into the restroom and ordered him not to flush the toilet.

Appellant went into the stall and shut the door. The door did not close completely, and Detective Peterson was able to peek through the crack. He testified that Appellant stood near the toilet, but did not appear to be using it.[3] At that point, he again became "very suspicious" that Appellant was trying to destroy "evidence."

Detective Peterson went into the adjacent stall, climbed on the toilet seat and looked over the partition into Appellant's stall. He saw Appellant withdrawing his hand from the disposable seat cover dispenser. When Appellant left the stall, Detective Peterson reached into the dispenser, removed a packet of cocaine and placed Appellant under arrest. A subsequent search of Appellant's pocket produced a second packet of cocaine.

The court below denied Appellant's motion to suppress, finding that Detective Peterson had "reasonable grounds to believe that the Defendant was in fact attempting to destroy or abandon evidence and that there were exigent circumstances for the detective to take immediate action to protect the evidence from being destroyed." Appellant was subsequently convicted of promoting a dangerous drug in the first degree.

II.

Appellant contends that he had a reasonable expectation of privacy inside the closed toilet stall and that Detective Peterson violated that expectation by standing on an adjacent toilet and peering over the partition.[4]

---

[3]The crack was about one-half to one inch wide and according to the testimony, afforded Detective Peterson nothing more than an occasional glimpse of Appellant's right shoulder.

[4]Appellant also alleges that this expectation of privacy was violated when Detective Peterson peered through the crack in the door. We need not reach this issue since we find that Detective Peterson's surveillance from the adjacent stall was in itself unreasonable. However, in *State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462 (1978), where we invalidated a search based upon the observations of an officer who had to stand on crates to look through a hole in a venetian blind, we suggested that the result might be different if the hole had been at ground level.

It is well settled that an area in which an individual has a reasonable expectation of privacy is protected by the fourth amendment of the United States Constitution and by article 1, § 7 of the Hawaii State Constitution and cannot be searched without a warrant. *Katz v. United States,* 389 U.S. 347 (1967); *State v. Wong,* 68 Haw. ___, 708 P.2d 825 (1985); *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977).

Any warrantless search of a constitutionally protected area is therefore presumptively unreasonable unless there is both probable cause and a legally recognized exception to the warrant requirement. *State v. Elderts,* 62 Haw. 495, 498, 617 P.2d 89, 92 (1980); *State v. Kender,* 60 Haw. 301, 307, 588 P.2d 447, 451 (1978).

In *State v. Kaaheena,* 59 Haw. 23, 27-28, 575 P.2d 462, 466 (1978), we set forth a two-part test to determine when one's expectation of privacy may be deemed reasonable:

First, one must exhibit an actual, subjective expectation of privacy.

Second, that expectation must be one that society would recognize as objectively reasonable.

Applying the second prong of the *Kaaheena* test first, we think it is beyond dispute that an expectation of privacy in a closed toilet stall is one that society would recognize as objectively reasonable. *See Brown v. Maryland,* 249 Md. 20, 238 A.2d 247 (1968).

We also think that Appellant exhibited a subjective expectation of privacy by closing the stall door. That the door did not close completely did not eliminate this expectation, since the crack was too small to afford Detective Peterson more than an occasional glimpse of Appellant's shoulder.

### III.

The court below found that reasonable grounds and exigent circumstances combined to justify Detective Peterson's warrantless surveillance of Appellant's toilet stall.[5] We need not determine whether exigent circumstances existed because we find that Detective Peterson lacked

---

[5]For purposes of a warrantless search or seizure, an exigency exists where immediate police action is needed to prevent imminent danger to life or serious damage to property, or to forestall the likely escape of a suspect of the threatened removal or destruction of evidence. *State v. Dorson,* 62 Haw. 377, 615 P.2d 740 (1980).

the requisite probable cause to climb on the seat of the adjacent toilet and look over the partition.

We dealt with probable cause in the context of a public toilet stall search in *State v. Delmondo,* 54 Haw. 552, 512 P.2d 551 (1973). We held that a warrantless search of a public toilet stall and a frisk of the defendant's person "are not unconstitutional acts where there is probable cause to believe that a crime is being, was, or is about to be committed." *Id.* at 553, 512 P.2d at 552. In that case, a police officer was using a public urinal when he heard two male voices discussing money and prices from a nearby stall. The officer pushed open the door and found Delmondo and another man conducting a drug transaction.

In *Delmondo,* we looked to *State v. Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967), to provide us with a working definition of "probable cause." In *Texeira,* we held, *inter alia,* that officers have probable cause when:

> [T]he facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime was being committed]. *Carroll v. United States,* 267 U.S. 132, 45 S. Ct. 280, 59 L. Ed. 543 (1925).

Applying *Texeira,* we then went on to hold that the officer had probable cause to search "as he heard *loud talking* about *money and prices* emanating from a toilet stall containing one bowl occupied by two persons." (Emphasis in original). *Delmondo,* 54 Haw. at 555, 512 P.2d at 553.

More recently, in *State v. Ward,* 62 Haw. 509, 511, 617 P.2d 568, 570 (1980), we held that an anonymous telephone tip received by police that a gambling operation was in progress, without more, was insufficient to support a finding of probable cause to conduct a warrantless binocular search of the defendant's appartment.

In the case before us, there was not even so much as an anonymous tip that Appellant might be carrying contraband. Moreover, the same factors that led us to conclude that probable cause existed in *Delmondo* simply do not exist here. Although Detective Peterson testified that he was "very suspicious" of Appellant's request to use the bathroom, nothing in this record could have given him probable cause to believe that Appellant was about to destroy "evidence."

Indeed, the question well might be, "evidence of what?" The judge below concluded that the initial stop of Appellant was only to investi-

gate his possible involvement with the illegal entry of Percy Biggar and Lorna Robinson. The only developments subsequent to the initial stop were Appellant's request to use the bathroom, his nervousness upon being followed, and his apparent failure to use the toilet after stating an interest in doing so.

While it is obvious from the record that Detective Peterson suspected Appellant of trying to destroy or abandon drugs, it is equally obvious that Appellant's bathroom behavior was insufficient to justify Officer Peterson's observing him from the adjacent stall.[6]

We therefore hold that Appellant's right to privacy was violated when Officer Peterson looked over the partition. The subsequent search of the toilet stall was tainted by Officer Peterson's illegal surveillance, and the cocaine found during that search should have been suppressed as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471 (1963).

Accordingly, the conviction is reversed and this case is remanded for action consistent with the opinion.

*Ignacio R. Garcia* (*Lani Rae Suiso Garcia* with him on the brief) for Defendant-Appellant.

*Arthur E. Ross,* Deputy Prosecuting Attorney, for Plaintiff-Appellee.

---

[6]The additional facts that Appellant had been arrested for a narcotics offense on an undisclosed date and that he falsely identified himself as "Manley" do not persuade us that Detective Peterson had probable cause to believe that Appellant was carrying drugs and that a crime was being, or was about to be, committed in his presence.