123 P.3d 679

STATE of Hawai'i, Respondent/Plaintiff–Appellant,

v.

Shanelle MAGANIS, Petitioner/Defendant–Appellee,

and

Leanne H. Cambra, also known as Leanne H. Adams, Defendant.

No. 25478.

Supreme Court of Hawai'i.

Nov. 23, 2005.

Brian A. Costa, (of Costa & DeLacy, LLLC) for petitioner/defendant-appellee Shanelle Maganis on the writ.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by DUFFY, J.

On October 18, 2002, the Circuit Court of the First Circuit, the Honorable Reynaldo D. Graulty presiding, granted the motion of Pe-

titioner/Defendant–Appellee Shanelle Maganis to dismiss Count II of the Amended Complaint, finding that there was no probable cause to arrest Maganis for Unauthorized Control of a Propelled Vehicle (UCPV) in violation of Hawai'i Revised Statutes (HRS) § 708–836 (Supp.2001).[1] On September 8, 2005, the Intermediate Court of Appeals (ICA) issued a published opinion reversing the circuit court, concluding that probable cause existed. *State v. Maganis*, 123 P.3d 684 (2005 WL 2160077) (Haw.App. 2005) [hereinafter, ICA's Opinion]. Maganis subsequently applied for a writ of certiorari to review the ICA's Opinion.

We granted Maganis's application for a writ of certiorari for the sole purpose of addressing her contention that the ICA misstated the probable cause standard for arrest in this jurisdiction, and thus erroneously concluded that probable cause existed. With respect to her initial contention, we agree with Maganis: the "watered down" version of the probable cause standard as set forth by the ICA is contrary to this jurisdiction's viable and controlling precedents, and we reject it. *See infra*, Section III.A. Nevertheless, applying the correct standard to the record presented, we concur with the ICA's conclusion that Sergeant Yomes had probable cause to arrest Maganis, and thus agree that the circuit court erred in granting Maganis's motion to dismiss.

## I. BACKGROUND

### A. Statement of Facts

The essentially undisputed facts, as stated by the ICA, are as follows:

At about 9:30 in the morning on July 29, 2002, Honolulu Police Department (HPD) Sergeant David Yomes (Sergeant Yomes) was on patrol in the Salt Lake area. As Sergeant Yomes drove past a residence on Ala Lehua Street, he saw a black Acura car parked in the driveway with its front facing the street. Defendant–Appellee Shanelle Maganis (Maganis or Defendant) was in the passenger seat and Leanne Cambra (Cambra) was in the driver's seat. Sergeant Yomes continued on his patrol to a nearby district park, then circled back to Ala Lehua Street and drove past the same residence. Sergeant Yomes saw Cambra step out of the Acura appearing to dry her hair with a towel while Maganis remained in the car. Sergeant Yomes decided to "run" the front license plate number to see if the Acura was stolen because "certain street characters" with prior arrests were known to frequent the residence where the Acura was parked.

A short time later, Sergeant Yomes learned through HPD dispatch that the Acura had been reported stolen. He returned to the Ala Lehua Street residence and parked his car, blocking the Acura. After requesting assistance from nearby units, Sergeant Yomes located Maganis and Cambra, who were now sitting on chairs behind the Acura. Officers responded to the scene and Sergeant Yomes had them detain Maganis and Cambra. Both women were cooperative.

Sergeant Yomes proceeded to question Dale Nojima (Nojima), who had just emerged from the house. Sergeant Yomes asked Nojima if he knew the two women. Nojima stated that he knew one of them, identifying Maganis as the woman he knew.[2] Nojima stated that earlier that morning he saw the other woman, Cambra, reversing the Acura into his driveway.

Sergeant Yomes noticed that efforts had been made to change the car's identity. The front license plate, which had been issued to the Acura, was different from the rear plate. Sergeant Yomes found the license plate matching the front plate on the floorboard of the front passenger seat.

---

1. HRS § 708–836 provides in relevant part: "A person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent or by changing the identity of the vehicle without the owner's consent."

2. Although the circuit court did not enter any express written findings with respect to Sergeant Yomes's testimony regarding his conversation with Nojima prior to arresting Maganis and Cambra, as the record indicates and the ICA noted, Sergeant Yomes testified that Nojima told him that Nojima was acquainted with Maganis, but not Cambra.

He also discovered that the ignition was "punched," in that the area "where you put your key to start the ignition" was damaged. Sergeant Yomes subsequently arrested Cambra and Maganis.

Maganis waived her constitutional rights later that evening and denied driving the Acura. But the following day, after failing a polygraph examination and again waiving her rights, Maganis gave a tape-recorded statement in which Maganis admitted that she and Cambra took turns driving the Acura, knowing that it had been stolen. Maganis denied any involvement in stealing the car or in changing the rear license plate.

## B. *Procedural History*

Respondent/Plaintiff–Appellant State of Hawai'i [hereinafter, the prosecution] charged Maganis with one count of UCPV in violation of HRS § 708–836. Maganis moved to dismiss on the ground that Sergeant Yomes did not have probable cause to arrest her for UCPV. On October 18, 2002, the circuit court granted Maganis's Motion to Dismiss, finding that Sergeant Yomes lacked probable cause, and that Maganis's confession must be suppressed as the fruit of the poisonous tree. The prosecution appealed, and the ICA reversed, concluding that Sergeant Yomes had probable cause to arrest Maganis for UCPV and that Maganis's post-arrest confession was thus admissible. We granted Maganis's Application for Writ of Certiorari, and we now affirm the ICA's Opinion in part and vacate in part.

## II. *STANDARD OF REVIEW*

■ · "[T]he determination whether probable cause to arrest exists . . . is reviewed under a *de novo* standard on appeal." *State v. Kaleohano,* 99 Hawai'i 370, 375, 56 P.3d 138, 143 (2002) (citing *State v. Navas,* 81 Hawai'i 113, 123, 913 P.2d 39, 49 (1996)).

**3.** *See also* HRS § 803–5(b) (1993) ("[A] police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has

## III. *DISCUSSION*

Maganis asserts: (1) the ICA's novel characterization of probable cause diminishes the probable cause standard to nothing more than the standard for reasonable suspicion; and (2) Sergeant Yomes did not have probable cause to arrest Maganis for UCPV. We hold that although the ICA improperly stated the probable cause standard, it reached the correct result in concluding that Sergeant Yomes had probable cause to arrest Maganis.

### A. *The ICA Erred In Characterizing the Probable Cause Standard.*

In describing the probable cause standard, the ICA made the following statement: "The probable cause standard . . . is less demanding than . . . proof by a preponderance of the evidence." This statement improperly characterizes the probable cause determination as set forth by this court, and we therefore reject it.

■ This court, in describing the probable cause determination, has stated: "Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. *This requires more than a mere suspicion but less than a certainty.*" *Carlisle ex rel. State v. Ten Thousand Four Hundred Forty–Seven Dollars in U.S. Currency ($10,447.00),* 104 Hawai'i 323, 331, 89 P.3d 823, 831 (2004) (quoting *State v. Detroy,* 102 Hawai'i 13, 18, 72 P.3d 485, 490 (2003)) (emphasis added).[3] This standard has two components. The first sentence describes the standard for determining the presence of probable cause. The second sentence describes the quantum of proof necessary to satisfy the standard.

### 1. The boundaries—mere suspicion and certainty.

We have stated that probable cause requires "more than a mere suspicion but less than a certainty." *$10,447.00,* 104 Hawai'i at

reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.").

331, 89 P.3d at 831 (quoting *Detroy*, 102 Hawai'i at 18, 72 P.3d at 490); *see also State v. Brighter*, 63 Haw. 95, 101, 621 P.2d 374, 379 (1980) (stating that probable cause "requires more than a mere suspicion but less than a certainty"); *State v. Texeira*, 50 Haw. 138, 142, 433 P.2d 593, 597 (1967) ("It is clear that the term probable cause, according to its usual acceptation, means less than evidence which would justify condemnation." (Internal quotation marks omitted.)). "Certainty," of course, is considerably greater than a mere preponderance of the evidence, which means that the existence of a fact is more likely than not. This court's formulation of the quantum of proof necessary to establish probable cause is thus more demanding than that suggested by the ICA, which would lower the bar for the presence of probable cause to less than a preponderance of the evidence as a *per se* matter.

■ The ICA, in support of its formulation, cites to the plurality opinion in *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), which states that probable cause "does not demand any showing that [a belief that a crime has been committed] be correct or more likely true than false."[4] While it is helpful to look at United States Supreme Court precedent when interpreting a provision of the Hawai'i Constitution that is parallel to the federal constitution,[5] this court has emphasized that "federal decisions do not . . . prevent this court from extending greater protection in interpreting the state constitution where we determine it to be appropriate." *Texeira*, 50 Haw. at 142, 433 P.2d at 597. This court has also repeatedly insisted that "as the ultimate judicial tribunal with final, unreviewable authority to interpret and enforce the Hawai'i Constitution, we are free to give broader protection under the Hawai'i Constitution than that given by the federal constitution." *State v. Wallace*, 80 Hawai'i

382, 398, 910 P.2d 695, 711 n. 14 (1996) (quoting *State v. Hoey*, 77 Hawai'i 17, 36, 881 P.2d 504, 523 (1994)). Thus, because this court's interpretation of probable cause affords more expansive protection under the Hawai'i Constitution, to the extent that the plurality holding in *Brown* is in conflict with this interpretation, we reject it.

The ICA also cites *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), for the proposition that the probable cause standard is less demanding than the preponderance of the evidence standard. The ICA, however, misinterprets *Gates*. The *Gates* Court said that "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place" in the probable cause decision. 462 U.S. at 235, 103 S.Ct. 2317. Contrary to the ICA's characterization, this statement does not imply that probable cause is *less demanding* than proof by a preponderance of the evidence. Rather, it merely states that probable cause is a *less finely-tuned* standard. *Gates*, therefore, does not address the requisite quantum of proof in the establishment of probable cause; rather, it addresses how the probable cause determination should be made, which will be discussed next.

### 2. Determining probable cause.

■ We have long held that the standard for determining probable cause is a practical and nontechnical concept, which involves a balancing of the citizens' right to be free from unreasonable interference with privacy and from unfounded charges of crime, and the needs of the community to be protected by law enforcement:

[T]he long-prevailing standards on probable cause:

---

4. The ICA also cites to *State v. Mitchell*, 167 Wis.2d 672, 482 N.W.2d 364 (1992), to support its formulation. The Supreme Court of Wisconsin stated that "[t]here must be more than a possibility or suspicion that defendant committed an offense, but the evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." *Id.* at 367–68. *Mitchell*, however, is not controlling authority and we decline to follow it.

5. Probable cause is required for all arrests and searches under the safeguards of the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. *State v. Navas*, 81 Hawai'i 113, 115–16, 913 P.2d 39, 41–42 (1996).

. . . seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*State v. Delmondo*, 54 Haw. 552, 555, 512 P.2d 551, 553 (1973) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). *See also State v. Texeira*, 50 Haw. 138, 143, 433 P.2d 593, 597 (1967) ("The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.").

We believe that the probable cause standard of requiring "more than a mere suspicion but less than a certainty" provides the flexibility necessary in determining probable cause, and preserves the necessary balance between the competing interests of law-abiding citizens and law enforcement. The ICA's attempt to "water down" the probable cause standard would unreasonably disturb this balance. We expressly reject the ICA's for-

mulation, and reconfirm that probable cause for arrest requires more than a mere suspicion, but less than a certainty. Accordingly, we vacate Section III.A. of the ICA's Opinion to the extent that it improperly narrows the probable cause standard as expressed by this court.

**B.** *The ICA Properly Concluded That the Circuit Court Erred in Granting Maganis's Motion for Dismissal Because Sergeant Yomes Had Probable Cause to Arrest Maganis.*

■ Although the ICA improperly expressed the probable cause standard, we hold that it correctly concluded that Sergeant Yomes had probable cause to arrest Maganis for UCPV as a principal or as an accomplice to Cambra.

A person can commit the UCPV offense as a principal by "intentionally or knowingly . . . operating the vehicle without the owner's consent or by changing the identity of the vehicle without the owner's consent" pursuant to HRS § 708–836, or as an accomplice, pursuant to HRS § 702–221(2)(c) (1993).[6] An accomplice is defined to include a person, who, "[w]ith the intention of promoting or facilitating the commission of the offense, . . . [a]ids or agrees or attempts to aid the other person in planning or committing it[.]" HRS § 702–222(1)(b).[7]

The ICA correctly concluded that Sergeant Yomes had probable cause to believe Maganis participated in the offense of UCPV as either a principal or an accomplice. Sergeant Yomes found that the ignition was damaged and the rear license plate, which had been removed and replaced with a different plate, was located on the floor of the front passenger seat where Maganis had

---

**6.** HRS § 702–221 states, in relevant part:
(2) A person is legally accountable for the conduct of another person when:
. . .
(c) He is an accomplice of such other person in the commission of the offense.

**7.** HRS § 702–222 states, in its entirety:
§ 702–222 Liability for conduct of another; complicity. A person is an accomplice of another person in the commission of an offense if:

(1) With the intention of promoting or facilitating the commission of the offense, the person:
(a) Solicits the other person to commit it; or
(b) Aids or agrees or attempts to aid the other person in planning or committing it; or
(c) Having a legal duty to prevent the commission of the offense, fails to make reasonable effort so to do; or
(2) The person's conduct is expressly declared by law to establish the person's complicity.

 

been sitting. Assuming, *arguendo*, that this evidence did not establish probable cause to arrest Maganis for the offense of UCPV as a principal, we hold that Sergeant Yomes nevertheless had probable cause to believe Maganis was an accomplice because: (1) the plate and ignition were located in such places that would suggest Maganis knew the vehicle was stolen; and (2) Maganis and Cambra were parked at a house, the owner of which knew Maganis, but not Cambra, suggesting that Maganis assisted in the decision to park at the house, thereby aiding or attempting to aid Cambra's commission of a UCPV violation. This evidence, when viewed as a whole, is sufficient to provide more than a mere suspicion (albeit less than a certainty) to a person of reasonable caution that Maganis committed the offense of UCPV either as a principal or as an accomplice.

In finding that there was probable cause for arrest under the facts of this case, we do not condone a HPD policy testified to by Sergeant Yomes that it was HPD's "policy that everyone in the [stolen] vehicle gets arrested for [UCPV]." Such a policy is plainly contrary to the requirement that probable cause must exist to make an arrest. To the extent that the ICA relied upon the "common enterprise" rationale of *Maryland v. Pringle*, 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), to circumvent the requirements of probable cause, we reject such reliance, as "common enterprise" is not a substitute for the mandate in our jurisdiction that probable cause based on specific "facts leading sensibly to their conclusions of probability[,]" *State v. Delmondo*, 54 Haw. 552, 555, 512 P.2d 551, 553 (1973) (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)), must be established in each case.

For the reasons set forth above, we agree with the ICA that Sergeant Yomes had probable cause to arrest Maganis for UCPV either as a principal or an accomplice, and Maganis's post-arrest confession was therefore admissible. Accordingly, the circuit court erred in granting Maganis's motion to dismiss.

## IV. CONCLUSION

Based on the foregoing, we vacate Section III.A. of the ICA's Opinion to the extent that it mischaracterizes the probable cause standard as expressly approved by this court, and affirm the ICA's Opinion in all other respects. Accordingly, we remand this case to the circuit court for proceedings consistent with this opinion.

