355 So.2d 1219 (1978)
Marshall MOORE, Appellant,
v.
STATE of Florida, Appellee.
No. GG-44.
District Court of Appeal of Florida, First District.
February 14, 1978.
Rehearing Denied March 9, 1978.
Michael J. Minerva, Public Defender, and Theodore E. Mack, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., for appellee.
MELVIN, Judge.
Appellant-defendant seeks reversal of a judgment and sentence imposed upon him April 14, 1977, based upon his plea of nolo contendere to a charge of unlawful possession of a controlled substance to wit, cocaine. The defendant, in due season, filed his motion to suppress the evidence seized by the police officer who arrested him and upon such motion having been heard and denied, entered his plea reserving the right *1220 to appeal the denial of his motion to suppress.
The record reveals that Officer Jefferson entered the men's restroom at the Jacksonville Greyhound Bus Station for the purpose of checking with reference to drug activity and other unlawful behavior. The officer testified that the defendant was inside a locked pay toilet stall. The officer noticed that the defendant's feet were pointing in a direction that was completely inconsistent with the location of a person's feet using any of the facilities in the pay toilet. The officer then looked through a half-inch crack that existed between the door and the wall of the toilet stall and saw the defendant holding a belt in his mouth thus tightening the belt around his arm so that his veins would become extended. The officer further noted that the defendant was introducing into his veins some type of injection. Thereupon the officer, with the assistance of the manager of the station, unlocked the stall and placed the defendant under arrest. Inside the stall were found a cap cooker and a match box lying on the toilet paper container. These articles contained cocaine and were seized. The only question presented here for review is whether the surveillance by the officer and seizure of the articles under the circumstances stated, constituted an unreasonable surveillance and search; therefore, all matters observed and obtained by the officer incident to his arrest were not admissible in evidence.
The officer had a legal right to be in the public bathroom and to observe anything that was within his plain view. The record reveals the officer's testimony:
"Q. When you stopped outside the toilet, how big a crack was there? [Crack between the toilet stall and the door]
"A. I'd say half an inch.
"Q. You were able to stand outside the stall and look through that crack, and in plain view, you saw him with the needle in his arm and his belt around his arm. Is that correct?
"A. Yes, sir."
Further, the testimony of the officer revealed:
"Q. How far away from the crack were you? Did you have to get close to it?
"A. No, I didn't have to peep. * * * so there's about a three-foot aisle in between the wash basins and toilets, so by me walking down the middle of the aisle, it puts me about six or eight inches in front of the stall.
"Q. So you are about six to eight inches away?
"A. All I had to do was look as I walked by... ."
Article I, Section 12, Constitution of Florida, grants to all persons the right to be secure against unreasonable searches and seizures. Where an officer is in a place where he has the lawful right to be and he observes within plain view a person engaged in the commission of a felony, or engaged in an activity which causes the officer reasonably to believe that a felony is then being committed, the officer has a right then and there to arrest such person. Section 901.15(1)(3), Florida Statutes. The defendant urges, however, that the act of the officer in looking through the crack in the door constituted an unlawful search within the meaning of Article I, Section 12. It did not.
In State v. Coyle, 181 So.2d 671 (Fla. 2d DCA 1966), the court held that evidence obtained by a police officer looking through a grill work that had been installed in the public restroom for observations purposes did not render his testimony subject to being suppressed as having been obtained by an illegal search and seizure, where the same information could have been obtained by the officer or any member of the public, being in the public restroom and looking through an opening thus viewing a defendant engaged in an unlawful activity. In State v. Coyle, at page 672, the court held:
"... The term `search' in its legal meaning implies a quest by an officer of law. It may be secret, intrusive, or accompanied by force. Ordinarily, observation of that which is open and patent is not a search... ."
Further, at page 673, the court held:
"... The constitutional guarantee * * * does not prohibit all searches *1221 but only those that are `unreasonable'; nor is such guarantee circumscribed by any particular formula for determination of reasonableness of a search. Rather, in determining whether or not a reasonable and valid search was made, a court will be guided by the circumstances surrounding the search and the manner in which it was carried out... ."
Then, at page 674, the court analyzed the decision of the United States Court of Appeals, Ninth District, in Smayda v. United States, 352 F.2d 251. That case involved the question of whether the view of an unlawful activity within a toilet located in Yosemite National Park constituted an unlawful search and seizure under the Fourth Amendment of the United States Constitution. The rangers in the Smayda case had reason to believe that homosexuals were using the restroom as a meeting place. They cut a hole over each of the toilet stalls for the purpose of observing whatever activity went on in the stall. The hole was screened to give the appearance of an air vent. The rangers carried out their surveillance and observed the commission of the crime that was the subject matter of that prosecution. The court measured the surveillance activities by the provisions of the Fourth Amendment, and held that the surveillance was not constitutionally offensive for that:
"(1) If the ranger's conduct was a `search,' defendants impliedly consented to it by doing what they did where they did it; and (2) what they did was no `unreasonable search' within the meaning of the Fourth Amendment. * * *
"`No case has yet stretched the Fourth Amendment to make its restrictions applicable to a clandestine observation, by officers of the law, of what goes on in a public place. We decline to be the first court to do so, and we think that these stalls were, in essence, a public place. It makes no difference that in this case, as in Norton [People v. Norton, 209 Cal. App.2d 173, 25 Cal. Rptr. 676], and Young [People v. Young, 214 Cal. App.2d 131, 29 Cal. Rptr. 492], the officer was concealed. By using a public place appellants risked observation, and they have no constitutional right to demand that such observation be made only by one whom they could see."
The court in Smayda ruled that if the defendants had in fact acquired some type of right to exclusive privacy in the "toilet stall" when they entered it, such right was subject to the condition in which the stalls were in, including spaces above and below the partitions and doors, holes in the walls and holes in the ceilings.
The officer did not owe the defendant any duty to announce that his activity was about to be observed. The defendant chose the toilet stall as a place where he would administer the shot of cocaine. His vision was not as keen or attentive as that of the officer. He selected a stall that had a one-half inch crack in the door through which one could easily observe his activity.
The defendant made a poor choice. He pointed his life and his feet in the wrong direction. The method of surveillance by the officer in this case was legal, his arrest of the defendant in the act of committing a felony was legal. The trial court therefore correctly ruled in denying the defendant's motion to suppress. Therefore, the judgment and sentence appealed from are
AFFIRMED.
MILLS, Acting C.J., and SMITH, J., concur.