501 So.2d 248 (1986)
STATE of Louisiana
v.
Karl F. JUPITER.
No. K 6391.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
Rehearing Denied February 18, 1987.
Writ Denied April 20, 1987.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty. and A. Hammond Scott, Asst. Dist. Atty., New Orleans, for State.
Clare Jupiter, Jupiter, Bryan & Gray, New Orleans, for defendant.
Before REDMANN, C.J., and WARD and WILLIAMS, JJ.
REDMANN, Chief Judge.
Defendant's motion to suppress evidence was denied. He pled guilty with reservation of his right to appeal. The trial court fined him $500 and placed him on probation for a year. Another three-judge panel of this court (with Judge Barry dissenting) dismissed defendant's appeal on grounds of nonappealability. The supreme court granted writs and remanded to us "to consider *249 as a writ application and to consider relator's assignments of error on the merits." That grant of certiorari by the supreme court brings the matter to this panel.
Defendant's assignment of error on the merits ("specification of error") was: "The [district] court erred in failing to find that Officer Farrell St. Martin violated the defendant's rights under the Fourth Amendment by his illegal search of Karl Jupiter's person." Defendant's appellate brief states two principles of law and arguments, namely that (1) "defendant had a reasonable expectation of privacy inside the closed toilet stall in a public restroom," and that (2) "The police officer lacked probable cause to search the closed toilet stall; therefore the search violated the defendant's rights under the fourth amendment to the U.S. Constitution."
Arresting police officer St. Martin testified:
"I was working a paid detail at Nexus [nightclub] ... [O]ur primary job around there is to make sure there's order in the lounge, and no one fighting, or selling drugs, or using drugs in the establishment.... [F]rom time to time, we go in the restroom of the lounge to check and make sure that no one using drugs, or selling drugs in the restroom, in the bathrooms. Occasionally, we have arrested some people using drugs in the bathroom, and one of the places is the bathroom stall. This particular occasion, I observed Mr. Jupiter in the stall, and there's openings on each side of the stall, like you can see on each side of the stall, and I observed him in the stall of [sic; over?], I think, a long period of time that he wasn't doing anything; that he, you know, that he was in there for, what reason being in there for. So, it arose my suspicion, and I observed Mr. Jupiter with his hands above his waist, as though if he was, you know, using some drugs, you know, or may have been using some drugs. So, that led me to stand on the vanity and look over the stall. And, as I did so, I observed Mr. Jupiter with cocaine in his possession."
Officer St. Martin further testified that the opening at the sides of the stall door is "aboutit's no more than an inch. It may be less than that." The restroom was open to all male patrons of the nightclub. Its facilities included two urinals as well as the toilet stall, and a vanity next to the stall. St. Martin further testified, in response to the judge's question, that his suspicion was raised by
"Well, the period of time he was in the stall, and it's a habit of, you know, people in general that have been using drugs, to go in the stall and use the drugs. You know, that's where they go ifif they don't leave out of the club, when they're about to snort cocaine, they go in the stall, and they may be in there for a long period of time, not using it, to either, you know, use more of the squat [sic]he just be standing in there, so, you know, it just led me to believe that something was up, other what he went in there to use it for. Q. When you first looked through the crack in the [] A. I seen him just standing up there. Q. Could you tell where his arms were at that time? A. Yes, they was above his waist, you know. You know, I didn't think he was about to use the, you know, the toilet."
Defendant argues that his was a reasonable expectation of privacy in the closed toilet stall, and that the officer's search of the stall was unreasonable, violative of the Fourth Amendment. We treat the two arguments together.
"The touchstone of Fourth Amendment analysis is whether a person has a `constitutionally protected reasonable expectation of privacy.' Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). Katz posits a two-part inquiry: first, has the individual manifested a subjective expectation of privacy in the object of the challenged search? Second, is society willing to recognize that expectation as reasonable?

*250 ....
"The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible."
California v. Ciraolo, ___ U.S. ___, 106 S.Ct. 1809, 1811, 1812, 90 L.Ed.2d 210 (1986).
Ciraolo ruled that one growing marijuana behind a ten-foot fence cannot have an expectation of privacy that society is prepared to honor as reasonable, against observation from aircraft in public navigation space. The cases from other states cited by defendant are all prior to Ciraolo. Some are, moreover, factually distinguishable in that they involved structures that appeared to be completely enclosed and thus to ensure privacy. We conclude that one in a toilet stall with one-inch spaces between its door and walls and completely open at its top, with a vanity next to it upon which anyone could stand, that is part of a larger, open, public nightclub restroom, cannot have an expectation of privacy that society is prepared to honor as reasonable, against observation through those one-inch spaces by others lawfully in the restroom or against observation over the top of the stall by anyone whose observation through the spaces prompts him for whatever reason to mount the vanity to see more clearly.
Affirmed.
WILLIAMS, J., concurs.