**Ronald D. COOK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–87–00525–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 8, 1988.
Discretionary Review Refused
March 8, 1989.

Madeline D. Sitzes, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Winston E. Cochran, Asst. Dist. Atty., for State.

Before SAM BASS, DUGGAN and LEVY, JJ.

OPINION

LEVY, Justice.

The appellant, Ronald D. Cook, was indicted for possession with intent to distribute cocaine, a controlled substance. He pleaded nolo contendere to a reduced charge of possession of cocaine. Punishment was assessed by the trial judge at three years confinement with leave granted to appeal the denial of appellant's motions to suppress the evidence.

The record reflects that on the evening of August 25, 1986, an unknown security guard approached E.L. Whitaker, a plain-clothes Houston Police Officer on duty at the Summit sports arena during a rock concert, and informed Whitaker that an unknown informant had told him, "just seconds earlier," that several white males were dealing heroin or cocaine and were "shooting up" in a men's bathroom or stall.

Whitaker and his partner decided to enter the bathroom in which the described activity was occurring. Whitaker testified that the guard said, "It just occurred just a second ago and if we went in immediately, we should be able to see them still in the process of distributing or using contraband."

Whitaker also testified that, based on his experience as a narcotics officer, he knew that public restrooms at the Summit were a common place for drug transactions to occur, and that he had in fact "made numerous cases in all of the bathrooms at the Summit." He also testified that he was aware that narcotics could be, and often were, easily disposed of in restrooms by flushing them down the toilet.

Whitaker stated that he and his partner went into the designated men's bathroom immediately and did not waste any time. Once inside the bathroom, Whitaker testified that his attention was drawn to one particular stall by what he considered to be suspicious activity: three pairs of legs inside the stall. He testified that the stall door was closed but that he could see into the bottom of the stall because there were approximately 12 to 14 inches of open space underneath the door.

Based on the tip he had received, his knowledge as a narcotics officer, his awareness of the ease with which narcotics could be disposed of in a bathroom stall, and the presence of six legs in the suspect stall instead of the usual two, Officer Whitaker decided to investigate. He entered the adjacent stall, stood upon the commode, looked over into the heavily occupied stall, and observed three individuals therein. One of them was the appellant who was handing a plastic bag containing a white crystalline powder to another of the occupants. Whitaker believed the substance to be contraband. He identified himself as a police officer and told the suspects to stop what they were doing. Immediately, the suspect plastic bag was dropped into the commode and appellant began stuffing a plastic pouch into his waistband.

The appellant was arrested, and 16 plastic bags of cocaine were found in the pouch he had stuffed into his waistband.

Appellant asserts only one point of error, contending that both trial judges erred in denying his motions to suppress the evidence seized because it was the fruit of a warrantless search that was conducted without probable cause.

Appellant urges and the State concedes that the Texas Court of Criminal Appeals has held that "[a] toilet stall in a public restroom is private to the extent it is offered to the public for private, however transient, individual use." *Buchanan v. State,* 471 S.W.2d 401, 404 (Tex.Crim.App. 1971). The Court held that Buchanan had a reasonable expectation of privacy in a men's restroom stall that he occupied with another man for the purpose of sodomy. *Id.* See also *Leibman v. State,* 652 S.W.2d 942 (Tex.Crim.App.1983). What people seek to preserve as private, even in areas accessible to the public, may be constitutionally protected because the Fourth Amendment protects people, not places. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Buchanan,* 471 S.W.2d at 404.

Accordingly, we agree that the appellant had a reasonable expectation of privacy while inside the restroom stall with the door shut. Assuming that a "search," conducted without a warrant, resulted when Officer Whitaker stood on the commode of the neighboring stall and peered over the dividing wall into appellant's stall, the issue then becomes whether Whitaker's warrantless search was legal; i.e., consistent with the respect that the State must accord to the privacy, dignity, and integrity of its citizens. *See Miranda v. Arizona,* 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed. 2d 694 (1966).

The basic purpose of the Fourth Amendment, United States Constitution, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. The same is true of art. I, § 9 of the Texas Constitution, and it is well settled under the Fourth and Fourteenth Amendments of the United States Constitution that a search conducted without a warrant issued upon probable cause is "per se unreasonable ... subject only to a few specifically established and well-delineated exceptions."

*Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim. App.1976) (citations omitted). One of these permissible warrantless exceptions is a search "with probable cause ... but with exigent circumstances." *Id.* at n. 1. Among the requisite exigent circumstances that permit a warrantless search is the necessity to prevent the imminent destruction of evidence or contraband. *See Stewart v. State*, 681 S.W.2d 774, 777 (Tex.App. —Houston [14th Dist.] 1984, pet. ref'd). When the issue of the legality of a warrantless search is brought forward on appeal, "[t]he duty of the reviewing court is to look to the totality of the circumstances to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action." *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.1988).

In the case at bar, Whitaker was an experienced narcotics officer who knew from his experience that public bathrooms were often the scene of drug transactions. He received a tip, which he immediately acted upon, that several men were involved in drug transactions or use in a stall in a designated men's bathroom. Standing alone, this anonymous tip would not justify looking into the stall, as the State concedes, but upon entering the designated bathroom, he observed that one stall was occupied by three men. It was not irrational for Whitaker to infer that the stall was not being used for its regular and intended purpose. He also knew that narcotics were easily disposed of by flushing them down commodes in bathrooms, and that this situation made the circumstances sufficiently exigent to disallow time to procure a warrant.

Applying the appropriate standard, as set out in *Eisenhauer*, we hold that the values implicit in the Fourth Amendment were not jeopardized and that Officer Whitaker had probable cause, considering the totality of the circumstances, to conduct the warrantless search by looking inside the stall occupied by appellant. Because the arrest and search were not illegal, the evidence seized as a result thereof was not tainted, and was admissible. We conclude that the trial court did not err in denying appellant's motion to suppress the bags of cocaine that were seized as the result of the search and appellant's subsequent arrest.

Appellant's sole point of error is overruled and the judgment of the trial court is affirmed.

DUGGAN, J., concurs.

DUGGAN, Justice, concurring.

I concur with the majority's disposition of the appeal. I specifically agree with the majority's reasoning that Officer Whitaker had probable cause, coupled with exigent circumstances, to make the warrantless arrest of appellant and the two other individuals who occupied the auditorium restroom toilet stall described in the majority opinion.

However, I strongly disagree with the majority's conclusion that a "search" occurred, or that the toilet stall in question afforded appellant and the two other simultaneous adult occupants a reasonable expectation of privacy.

As described in the record, the four sides of the toilet stall here in question were formed by the restroom wall to the rear, a partition wall on either side, and a door to the front. There was an open space of approximately 12 to 14 inches between the restroom floor and the bottoms of the door and the partition walls. Neither *Buchanan v. State*, 471 S.W.2d at 401, nor *Leibman v. State*, 652 S.W.2d at 942, cited by the majority, give any indication that the enclosed privacy areas protected in those

decisions (a toilet stall with a door in *Buchanan;* a coin-operated movie arcade booth with a door in *Leibman,* were other than solidly enclosed areas, built so that persons standing outside could not see persons—or activities—within. In the two cited cases, the initial police observation occurred when officers either positioned themselves to look down from concealed positions overhead, or climbed onto objects to look over the enclosure's top.

By contrast, our fact situation was one in which outsiders could readily observe six legs—the usual number to equip three ordinary human beings—through the open space between the floor and the bottom of the stall. These six legs were enough to alert the dullest passing observer to the fact that the toilet stall was not being used for its intended private purpose. Any expectation of privacy that the three occupants may have entertained was not "one that society is prepared to recognize as 'reasonable'." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed. 2d 220 (1979); *Chapa v. State,* 729 S.W.2d 723, 727 (Tex.Crim.App.1987).

With this exception, I concur in the result and join in affirming the judgment.