636 So.2d 68 (1994)
Teddy Arlington WARD, Petitioner,
v.
STATE of Florida, Respondent.
No. 93-920.
District Court of Appeal of Florida, Fifth District.
March 18, 1994.
Rehearings Denied April 27, 1994.
James Dickson Crock of James Dickson Crock, P.A., Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Ben Fox, Sp. Asst. Atty. Gen., Daytona Beach, for respondent.
W. SHARP, Judge.
Ward petitions this court for issuance of a writ of certiorari to review the circuit court's reversal of the county court's order suppressing evidence in a criminal case. The circuit court acted in its appellate capacity,[1] and thus although we have jurisdiction,[2] our scope of review is narrower than if this cause came to us as a plenary appeal. See Combs v. State, 436 So.2d 93 (Fla. 1983). Because we think the admission of the suppressed evidence would violate the Fourth Amendment *69 of the Federal Constitution we issue the writ. We do not reach the further question of whether the state's conduct in this case impaired Ward's right of privacy provided for by Article I, section 23 of the Florida Constitution.
Ward was charged with violating section 800.03 of the Florida Statutes. That statute provides:
It shall be unlawful for any person to expose or exhibit his sexual organs in any public place ... in a vulgar and indecent manner, or so to expose or exhibit his person in such place, or to go or be naked in such place. Provided, however, this section shall not be construed to prohibit the exposure of such organs or the person in any place provided or set apart for that purpose... .
§ 800.03, Fla. Stat. (1991).
Counsel for Ward filed a motion to suppress evidence allegedly unlawfully obtained by a police officer during an intrusive peeking into a bathroom stall occupied by Ward, which was located in a public restroom in a public park. The police officer and Ward both testified. The trial court ruled for Ward. Thus on appeal of this cause, any reviewing court must resolve any discrepancies in the record in Ward's favor.
Because of various complaints in the past by users of the park that the men's restroom was being used for illegal homosexual contacts and activities, Police Officer Barker made a practice of checking on the restroom in a random fashion. The restroom contains two stalls with doors that close. Barker's normal practice was to enter the rear stall and peak into the adjoining stall at whoever comes in, through a hole which has been punched out in the wall between the stalls.
On this particular occasion, Barker walked into the rear stall without noticing another person was occupying it. He saw this person seated on the toilet, his hand extended toward the hole. Barker backed out.
He then decided to peek into the front stall to see what its occupant was doing. In order to see into the front stall, then occupied by Ward, he had to stand close to the door and peer through the crack.
Barker saw Ward seated on the toilet. Ward was looking forward and did not appear aware of the hole and the other man in the next stall. He saw Ward masturbating his penis with his right hand. Shortly thereafter, Ward left the stall and bathroom.
Ward testified he entered the toilet stall to use it for its intended purpose. He did not expect anyone to peek in at him through the crack in the door and a hole in the wall. He was aware of another occupant in the stall next door, but did not look through the hole in the partition, and never saw its occupant. He admitted to "playing" with himself "too much."
Since a violation of section 800.03 is a first degree misdemeanor in Florida, the charges against Ward were brought in the county court. Ward's attorney filed a motion to suppress the evidence of what Officer Barker saw, based on both a violation of the Fourth Amendment and the Florida Constitution's right of privacy. Apparently, no motion to dismiss or motion pursuant to Florida Rule of Criminal Procedure 3.190(c)(4) was filed in this case.
We have serious doubts that any "crime" was committed in this case, based on the record before this court. The Florida case law dealing with section 800.03 requires that the exposure of one's person or the doing of a lewd act, be in the presence of another person, or in a public place from which the public is not excluded and could be reasonably expected to be. See Chesebrough v. State, 255 So.2d 675 (Fla. 1971), cert. denied, 406 U.S. 976, 92 S.Ct. 2427, 32 L.Ed.2d 676 (1972); Duvallon v. State, 404 So.2d 196 (Fla. 1st DCA 1981). Cf. State v. Werner, 609 So.2d 585 (Fla. 1992); State v. Davis, 623 So.2d 622 (Fla. 4th DCA 1993); Joel E. Smith, J.D., Annotation, What Constitutes "Public Place" within Meaning of Statute Prohibiting Commission of Sexual Act in Public Place, 96 A.L.R.3d 692 (1979); Annotation Criminal defense predicated upon indecent exposure, 94 A.L.R.2d 1353 (1964); 50 Am.Jur.2d Lewdness & Indecency §§ 1, 17. It appears from this record that Ward was not in such a public place, and the only reason Officer Barker saw him was because *70 Barker peeked (knothole fashion) through the door crack.
Further, section 800.03 specifically provides that the exposure of sex organs must take place in a locality not "set apart for that purpose."[3] Obviously a closed toilet stall is one place set aside for that purpose. And masturbation, by itself, is not a crime in Florida (nor any other state that we are aware of). However, because no motions to dismiss were filed, we must address the constitutional issues posed by the county court's ruling on Ward's motion to suppress.
The county court found that the design of the toilet stalls was sufficient to provide the occupant, after closing the doors, with a degree of privacy.[4] This privacy was invaded by Officer Barker's looking through the crack in the door in a "peeping Tom fashion."[5]
The trial court concluded that due to the design of the toilet stall, Ward had both a "reasonable expectation of privacy" and a subjective expectation of privacy within the scope of Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and therefore Officer Baker's peeking at him (without any probable cause to think he was committing a crime) was an unlawful search and seizure under the Fourth Amendment of the Federal Constitution. She also ruled that Officer Barker's peeking was an unlawful invasion of Ward's privacy guaranteed by Article I, section 23 of the Florida Constitution. Accordingly, she suppressed the evidence produced by Officer Barker's viewing.
On appeal, the circuit court ruled that Ward had no reasonable expectation of privacy as to his activities in the closed stall of the public restroom. It characterized Ward's behavior as the same as though he had been masturbating in the open, public area of the restroom, or with the door ajar or open. But the factual issues dealing with the design of the restroom were for the trier of fact. And, she found on this point that:
"[I]t is possible for a person standing outside the stalls to look into one of the stalls by peering through the small slit on the side of the door where the door is attached with hinges to the wall dividing the two stalls."
She also said it required the officer's "affirmative action" of peeking through the crack *71 to see Ward inside. This is not a "plain view" case.[6]
We agree with the circuit court that had Ward been masturbating in the public area of the restroom with the intent of exposing himself to others, or had he been doing so in a stall, the interior of which could be freely seen from the public areas, a reasonable expectation of privacy would not have existed. But we must take the record as it exists before us, and resolve all factual disputes as the trier of fact did, if there was sufficient competent evidence to support her findings.[7] In this case, we agree that there was.
The question of whether and under what circumstances a person has a reasonable expectation of privacy in a public restroom protected by the Fourth Amendment has arisen in a surprisingly large number of cases in other jurisdictions. See Michael R. Flaherty, Jr., Annotation, Search and Seizure: Reasonable Expectation of Privacy in Public Restroom, 74 A.L.R.4th 508 (1989). The weight of authority appears to hold that warrantless observations of a person in a public restroom while occupying a closed toilet stall should be suppressed unless the police had probable cause to believe a crime was being committed. The degree of privacy afforded appears to turn on the amount of privacy or shielding from view that is afforded by the design of the closed toilet stall from ordinary viewing from the public areas of the restroom (not hidden camera's in the ceiling or policemen hidden behind false vents, pipes or two-way mirrors).[8] However, California and Oregon cases hold that a reasonable expectation of privacy exists even for doorless toilet stalls. See State v. Casconi, 94 Or. App. 457, 766 P.2d 397 (1988); People v. Triggs, 8 Cal.3d 884, 106 Cal. Rptr. 408, 506 P.2d 232 (1973).
In this case, the record established that Ward was in an enclosed stall with the door closed. He was not freely visible from the public areas. And there was no probable cause justification for Officer Barker to think a crime was being committed.[9]
No Florida case has held that evidence obtained by police observations of a person in a public restroom should be suppressed on Fourth Amendment grounds. But the three cases we have found where the Fourth Amendment defense was raised and rejected are distinguishable. In State v. Coyle, 181 So.2d 671 (Fla. 2d DCA 1966), the police observations were of activities taking place in a doorless stall of a public restroom. In State v. Daniel, 319 So.2d 582 (Fla. 4th DCA 1975), the police saw the defendant with illegal drugs in his possession, in the public area of the restroom. And, in Moore v. State, 355 So.2d 1219 (Fla. 1st DCA 1978), the police had reasonable grounds to believe the defendant was not using the closed toilet stall for its normal purpose and they could see enough through the door openings (not having to peep) by simply standing outside, to detect the commission of a crime.
This case appears to be factually similar to City of Tukwila v. Nalder, 53 Wash. App. 746, 770 P.2d 670 (1989) and State v. Limberhand, 117 Idaho 456, 788 P.2d 857 (1990). In both cases, a police officer clandestinely peeked into a closed and enclosed toilet stall, to see the defendant seated on a toilet, masturbating by himself. Both courts held that in *72 using the test set forth in Katz v. United States, the defendant had both an objective and reasonable expectation of privacy, and a subjective one. They held the evidence obtained by the police surveillance should be suppressed, based on the Fourth Amendment.
The evidence in this case should have been suppressed for the same reason. A person inside a closed toilet stall in a public restroom is entitled to be free from unwarranted peeking and intrusion, where there is no probable cause or suspicion he is using the facility for an unlawful purpose. Katz v. United States.
Subjectively, Ward expected privacy, based on his testimony and his actions in closing the door and keeping himself shielded with the closure of the partition afforded. Objectively, society must grant Ward and all others so situated, the expectation of privacy under these circumstances if it is to exist anywhere in a public place. If not, then society must be willing to accept the prospect of being observed by hidden cameras, two-way mirrors, or clandestine peeking while engaged in one's natural functions in a closed toilet stall in any public building. We doubt society is prepared or willing to accept that prospect.
Accordingly, we grant the writ of certiorari, quash the circuit court, and reinstate the county court's order suppressing the evidence adduced from Officer Barker. We remand to the trial court for further proceedings consistent with this opinion.
PETITION FOR WRIT OF CERTIORARI GRANTED.
HARRIS, C.J., concurs.
PETERSON, J., dissents with opinion.
PETERSON, Judge, dissenting.
It is unfortunate that the defendant failed to file a (C)(4)[1] motion in the county court so that the labor of the attorneys and judiciary involved in this case could have been conserved. The majority opinion properly details the reasons why Ward was clearly not guilty of the offense charged, and the officer's testimony merely confirms that the defendant's actions did not violate the prohibitions of a criminal statute.
Certiorari review involving constitutional issues was not required by the facts of this case. I would deny the writ and clearly indicate in doing so that, while the defendant chose an inappropriate location to act in the manner alleged, he is guilty of no crime now described in the Florida Statutes.
NOTES
[1] Fla.R.App.P. 9.030(c)(1).
[2] Fla.R.App.P. 9.030(b)(2).
[3] "[P]ublic restrooms, bathing and lockerroom facilities and those places where nudity or exposure is necessarily expected ... are encompassed in the exception to the statute." Hoffman v. Carson, 250 So.2d 891, 893 (Fla. 1971).
[4] The trial judge found:

The restroom facility is within the Sunrise Park, a public park located in the City limits of the City of Holly Hill, and it appears from the testimony in both cases that the men's restroom facility consists of several standard urinals and handwashing sinks and two standard toilets enclosed within adjoining stalls with swinging doors and a partition dividing the two toilets. The walls and doors enclosing the toilets are of sufficient height to prevent someone standing outside the stalls from observing a person seated on a toilet. Likewise, the partition between the two stalls is tall enough to prevent a person standing in one stall from observing a person seated on the toilet in the other stall. There is a hole in this partition which is approximately 2" in diameter and is located approximately 27" from the floor. Neither stall has locks on its door. However, the doors will completely or almost completely close creating a private "throne." It is possible for a person standing outside the stalls to look into one of the stalls by peering through the small slit on the side the door where the door is attached with hinges to the wall dividing the two stalls.
[5] The trial judge further found:

The door to Defendant's stall was considered by the officer to be `basically closed' although there being no latch or lock on these doors there was a `slight opening.' The door to the adjoining stall was also closed. The officer was not able to observe the Defendant at the side of the door where it opens and closes but was able to, through taking affirmative action to do so, peer through the slit between the door and the frame where the door is hinged and observe the Defendant. As in the D'AMBRA case the Defendant here was also using his hand to rub his `partially erect' sexual organ in a manner that is commonly referred to as `masturbation.' Defendant was seated on the toilet facing out or forward towards the door. After making eye contact with the Defendant, being certain that the Defendant had made eye contact with him, and making observation of the Defendant's sexual organ, the officer went to the front area or basin area of the restroom facility and within 1 minute the Defendant left.
[6] Compare Roberts v. State, 566 So.2d 848 (Fla. 5th DCA 1990).
[7] Caso v. State, 524 So.2d 422 (Fla. 1988), cert. denied, 488 U.S. 870, 109 S.Ct. 178, 102 L.Ed.2d 147 (1988).
[8] See State v. Berber, 48 Wash. App. 583, 740 P.2d 863 (1987); Bielicki v. Superior Court of Los Angeles County, 57 Cal.2d 602, 21 Cal. Rptr. 552, 371 P.2d 288 (1962); Brown v. Maryland, 3 Md. App. 90, 238 A.2d 147 (1968); Buchanan v. State, 471 S.W.2d 401 (Tex. App. 1971), cert. denied, 405 U.S. 930, 92 S.Ct. 984, 30 L.Ed.2d 804 (1972); People v. Kalchik, 160 Mich. App. 40, 407 N.W.2d 627 (1987); People v. Dezeki, 107 Mich. App. 78, 308 N.W.2d 652 (1981); State v. Bryant, 287 Minn. 205, 177 N.W.2d 800 (1970); United States v. White, 890 F.2d 1012 (8th Cir.1989), cert. denied, 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990); Poole v. State, 596 So.2d 632 (Ala. 1992); LaFave, 1 Search & Seizure 2d § 2.4 (1987).
[9] Compare Kirsch v. State, 10 Md. App. 565, 271 A.2d 770 (1970); People v. Mercado, 68 N.Y.2d 874, 508 N.Y.S.2d 419, 501 N.E.2d 27 (1986), cert. denied, 479 U.S. 1095, 107 S.Ct. 1313, 94 L.Ed.2d 166 (1987); United States v. Smith, 293 A.2d 856 (D.C.App. 1972); Cook v. State, 762 S.W.2d 714 (Tex. App. 1988); State v. Biggar, 68 Haw. 404, 716 P.2d 493 (1986); State v. Jupiter, 501 So.2d 248 (La. App. 1986).
[1] Rule 3.190(C)(4), Fla.R.Crim.P.