910 P.2d 732

**STATE of Hawai'i, Plaintiff–Appellant,**

**v.**

**Ellen NAEOLE, Defendant–Appellee.**

**No. 17776.**

Supreme Court of Hawai'i.

Jan. 30, 1996.

420

James H.S. Choi, Deputy Prosecuting Attorney, on the briefs, Honolulu, for plaintiff-appellant.

Alexandra Scanlan, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellee.

Before KLEIN, Acting C.J., LEVINSON, NAKAYAMA and RAMIL, JJ., and PERKINS, Circuit Judge, in place of MOON, C.J., Recused.

NAKAYAMA, Justice.

The State of Hawai'i (the State) appeals from an order of the circuit court granting a motion to suppress evidence seized from Ellen Naeole (Appellee).[1] The State contends that the circuit court erred in holding that the evidence was unlawfully seized in violation of Appellee's constitutional right to be free from unreasonable searches and seizures.[2] The circuit court held that, because

---

1. Hawai'i Revised Statutes (HRS) § 641–13 (1993) provides in pertinent part that "[a]n appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to Chapter 602, in all criminal cases, in the following instances: ... (7) From a pretrial order granting a motion for the suppression of evidence[.]"

2. The fourth amendment to the United States Constitution provides:

the State seized the evidence without a warrant and without Appellee's consent, the seizure was invalid and the evidence inadmissible. On appeal, the State contends that the evidence was lawfully seized in a search incident to a lawful arrest.[3]

For the reasons stated below, we agree with the State and reverse the circuit court's order and remand the case for further proceedings.

## I. *FACTS*

On April 2, 1992, at approximately 12:45 a.m., Honolulu Police Department (HPD) Sergeant Alan Anami (Anami), as part of an investigation in response to vice complaints, was sitting in his police car watching the Hotel Street area for signs of narcotic trafficking. He observed a man approaching, and being approached by, people whom Anami knew had used drugs. Anami observed Appellee walking with the man and then entering a bar with him. When Appellee and the man left the bar, they were followed by HPD Officer Buchannon (Buchannon). Anami then heard over his police radio that Buchannon had stopped the man, but had lost sight of Appellee.

Anami drove towards the area where Appellee was last seen. He arrived in the area and exited his car, leaving the motor running. With his flashlight, Anami walked down the street looking for Appellee. Meanwhile, Buchannon remained with, and questioned, the man who had been walking with Appellee.

As he was walking down the street, Anami spotted Appellee dozing in the front passenger seat of a parked vehicle. Anami approached the vehicle and shined his flashlight inside. Anami observed a plastic bag containing two paper packets in Appellee's hand. Although he did not see any narcotics, Anami believed the packets were "bindles"—a street vernacular for folded paper containers of narcotics. In an effort to get Appellee's attention, Anami knocked on one of the vehicle's windows. Appellee awoke from the sound of Anami knocking, looked out the window, and saw Anami who was shining his flashlight on his police badge.

Anami told Appellee to unlock the door and exit the vehicle. As she exited, Anami observed Appellee "put[ting] something down the front of her pants." As Appellee exited the vehicle, she held a jacket around her arm. Not knowing what was in her jacket or what the jacket may have been covering, Anami ordered Appellee to place the jacket on the roof of the vehicle. After Appellee exited the vehicle, Buchannon, who had by this time finished questioning the man who had been walking with Appellee, arrived at the scene. Anami told Buchannon to watch Appellee while he parked his car. When Anami returned, he observed the jacket, now on the hood of the car, adjacent to other drug paraphernalia. However, the bindles that he had earlier observed were not among the items on the hood of the car. Because he presumed that Buchannon had not allowed Appellee to leave or discard anything, Anami reasoned that Appellee must have had the bindles he had previously seen in her possession. Anami then remembered that Appellee had put something down the front of her pants when she exited the vehicle. Anami looked at Appellee's tight fitting, "spandex" stretch pants, and noticed "lumps" in the front of her pants. Anami concluded that the lumps resulted from Appellee placing the bindles down the front of her pants.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 7 of the Hawai'i Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

3. The State also contends that the circuit court's findings of fact were correct, but incomplete, and therefore, erroneous. Because we reverse the order based on the admissibility of the suppressed evidence, we will not address this contention.

Anami ordered Appellee to "pull out whatever she had stuffed down the front of her pants." Appellee removed two paper bindles that were not in the plastic bag that he had previously observed. Seeing that Appellee still had lumps in the front of her pants, Anami asked her, "what else you got inside there?" Appellee reached into her pants and produced the plastic bag containing two more bindles. Anami then placed Appellee under arrest for knowingly possessing a dangerous drug in the third degree, in violation of HRS § 712–1243(1) (1993).[4]

Prior to trial, Appellee moved to suppress the bindles on the grounds that the search of her pants and the resulting seizure of the bindles violated her constitutional right to be free from unreasonable searches and seizures. The circuit court held that, because Appellee did not consent to the search of her pants, the seizure of the bindles violated Appellee's constitutional right to be free from unreasonable searches and seizures. Consequently, the circuit court suppressed the evidence.[5] This appeal followed.

## II. *STANDARD OF REVIEW*

■ "A court's COL [conclusions of law] are reviewed under the right/wrong standard. Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Meyer,* 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995) (citations and quotations omitted).

## III. *DISCUSSION*

Both the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution ensure that an individual's legitimate expectations of privacy will not be subjected to unreasonable governmental intrusions. *State v. Bonnell,* 75 Haw. 124, 136, 856 P.2d 1265, 1272 (1993). When a governmental intrusion does not invade an individual's legitimate

expectation of privacy, "there is no 'search' subject to the Warrant Clause." *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). However, governmental agents are prohibited from searching through an individual's belongings at will. *See In re Jane Doe,* 77 Hawai'i 435, 439, 887 P.2d 645, 649 (1994). In order to search an area in which an individual has a reasonable expectation of privacy, government officials are required to obtain a search warrant to assure that such searches will be based on probable cause and be limited in their scope. "The basic purpose . . . [of these constitutional provisions] is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Bonnell,* 75 Haw. at 136, 856 P.2d at 1272 (brackets in original and internal quotation marks omitted) (citing *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967)).

*Meyer,* 78 Hawai'i at 311–12, 893 P.2d at 162–63; *see also State v. Wallace,* 80 Hawai'i 382, 392–394, 910 P.2d 695, 705–707 (Haw. 1996).

■ We first address whether a search ever took place. "A 'search' implies that there is an exploration for an item or that the item is hidden." *Wallace,* at 393–394, 910 P.2d at 706–707 (quoting *Meyer,* 78 Hawai'i at 312, 893 P.2d at 163 (citation omitted)). In the present case, Anami approached the car in which Appellee was dozing, and shined his flashlight inside. With the aid of the flashlight, Anami was able to view two bindles located in Appellee's hand. In *State v. Kapoi,* 64 Haw. 130, 140, 637 P.2d 1105, 1113 (1981), we held that a visual inspection aided by a flashlight does not convert the scan of a vehicle's interior into a constitutionally regulated search. Thus, Anami's inspection of Appellee in the car, aided by a flashlight, was not a search subject to constitutional scrutiny.

---

4. HRS § 712–1243(1) provides in pertinent part that "a person commits the offense of promoting a dangerous drug in the third degree if [the person] knowingly possesses any dangerous drug in any amount."

5. The circuit court also suppressed evidence regarding the other drugs and drug paraphernalia that Anami had observed on the hood of the car. The State does not take issue with the suppression of this evidence.

■ Upon Appellee exiting the car, Anami noticed that something was hidden inside Appellee's pants. Anami ordered Appellee to "pull out whatever she had stuffed down the front of her pants." In response to the order by Anami, Appellee removed the items from her pants. Because Appellee removed the items in response to Anami's direct order,[6] thus creating an involuntary removal, it constituted a search. *Meyer*, 78 Hawai'i at 312, 893 P.2d at 163.

Because a search took place, we must now address whether the search was allowable under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution. *See supra* note 2.

> We have stated that, if anything is settled in the law of search and seizure, it is that a search without a warrant issued upon probable cause is unreasonable per se. However, we have also recognized that the warrant requirement is subject to a few specifically established and well-delineated exceptions. These exceptions provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate.

*Meyer*, 78 Hawai'i at 312, 893 P.2d at 163 (citations and internal quotations omitted); *see also Wallace*, at ―― ――, 910 P.2d at 706–707.

■ In the present case, when Appellee was asked to remove the bindles from her pants, she was "searched" without a warrant. This search was presumptively unreasonable. *Id.* "The State has the burden of overcoming this initial presumption of unreasonable-ness by proving that the search falls within one of the well-recognized and narrowly-defined exceptions to the general warrant requirements of the fourth amendment." *State v. Paahana*, 66 Haw. 499, 504, 666 P.2d 592, 596 (1983) (citations omitted). This burden on the State may be met "by a showing that the facts of the case justified the police in searching without a warrant and that the search itself was no broader than necessary to satisfy the need which legitimized a departure from the warrant requirement in the first place." *State v. Clark*, 65 Haw. 488, 493, 654 P.2d 355, 359–60 (1982) (citations and quotation marks omitted).

The State contends that the search falls within the "search incident to a lawful arrest" exception to the warrant requirement. We have long held that a search incident to a lawful arrest is an "exception to the usual requirement that the officer have a warrant prior to conducting the search." *State v. Enos*, 68 Haw. 509, 510, 720 P.2d 1012, 1014 (1986).

In its COL Nos. 9 and 10, the circuit court concluded that, because the seizure was invalid, the arrest was invalid, and because the arrest was invalid, the search and seizure was invalid, and, thus, there was no valid search incident to a lawful arrest. We review this COL *de novo*. *See Meyer*, 78 Hawai'i at 311, 893 P.2d at 162.

■ " '[I]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification.' " *Smith v. Ohio*, 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990) (quoting *Sibron v. New York*, 392 U.S. 40, 63, 88 S.Ct. 1889, 1902, 20

---

6. In its findings of fact (FOF) No. 16, the circuit court found that Appellee did not consent to the search. The State disagrees.

> A court's FOF are reviewed under the clearly erroneous standard . . . and will not be set aside on appeal unless they are determined to be clearly erroneous. A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake had been committed.

*Meyer*, 78 Hawai'i at 311, 893 P.2d at 162 (citations and quotations omitted). Whether the search in this case was consensual or not is a factual issue. To set aside the circuit court's determination of this issue, we would have to be convinced that it was clearly erroneous. *Id.*

Anami saw Appellee dozing in an upright position in the right front passenger seat of a car. He knocked on one of the car's windows and flashed his badge at her. He then ordered her to exit the car and had Buchannon watch her while he parked his car. Anami then ordered Appellee to remove the items that she had stuffed down her pants.

We hold that the circuit court did not err when it found that Appellee did not voluntarily remove the bindles, but only removed them in response to Anami's order; therefore, we will not set aside this FOF.

L.Ed.2d 917 (1968)). "[J]ustifying the arrest by the search and at the same time ... the search by the arrest just will not do." *Id.* (citations and quotation marks omitted). But, "[a]s long as there is an independently established probable cause for an arrest, a search immediately preceding arrest is no greater invasion of a person's security and privacy than a search following arrest." *State v. Delmondo,* 54 Haw. 552, 557 n. 2, 512 P.2d 551, 554 n. 2 (1973).

The circuit court correctly held that the search could not justify the arrest. However, it incorrectly held that the arrest could not justify the search. If the arrest was based on probable cause independent of the search, the search may have been a valid search incident to a lawful arrest. *Id.*

 We now address whether, in this case, there was a valid search incident to a lawful arrest. Under *Delmondo,* for a search prior to arrest to be a valid search incident to a lawful arrest, (1) there must be probable cause independent of the search, and (2) an arrest must occur immediately after the search. *Id.* Additionally, the scope of a search incident to a lawful arrest is limited to that which is "reasonably necessary to discover the fruits or instrumentalities of the crime for which the defendant is arrested." *Enos,* 68 Haw. at 511, 720 P.2d at 1014 (quoting *State v. Kaluna,* 55 Haw. 361, 371, 520 P.2d 51, 59 (1974) (quoting *State v. Hanawahine,* 50 Haw. 461, 464, 443 P.2d 149, 151–52 (1968))) (emphasis omitted). Therefore, in order for a search prior to an arrest to be a valid search incident to a lawful arrest, the search must be: (1) to discover the fruits or instrumentalities of the crime for which the defendant is arrested; (2) followed immediately by an arrest; and (3) based on probable cause independent of the search. *Id.; Delmondo,* 54 Haw. at 557 n. 2, 512 P.2d at 554 n. 2.

 "Probable cause means such a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." *State v. Chung,* 75 Haw. 398, 409–10, 862 P.2d 1063, 1070 (1993) (citations and quotation omitted). Appellee was seen accompanying someone who approached, and was approached by, known drug users. Appellee was then seen dozing with what appeared to be packets containing narcotics in her hand. These facts "would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused." *Id.* Hence, we hold that the presence of bindles, viewed by an officer with sufficient training and experience, created probable cause to arrest Appellee independent of the challenged search.

 Because: (a) there was probable cause to make an arrest prior to the search of Appellee's apparel; (b) the search was limited to finding the instrumentalities of the crime; and (c) an arrest was made immediately after the search, the search was a valid search incident to a lawful arrest. Because the search was valid, we hold that the bindles obtained in the search should not have been suppressed.[7]

## IV. CONCLUSION

For the reasons stated above, we hold that the search of Appellee's pants did not violate the fourth amendment to the United States Constitution or article I, section 7 of the Hawai'i Constitution. Accordingly, we reverse the circuit court's order granting Appellee's motion to suppress and remand for proceedings consistent with this opinion.

---

7. The parties never addressed, and the record fails to indicate, whether a search was made of the bindles' contents. As such, a ruling addressing this issue would be premature at the present time. Accordingly, we limit our holding to the seizure of the bindles. *See Wallace,* slip op. at 32–37 at ——– ——, —— P.2d at ——– ——; *Kaluna,* 55 Haw. at 363–64, 369–75, 520 P.2d at 55, 58–62.