123 P.3d 684

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Shanelle MAGANIS, Defendant–Appellee,**

and

**Leanne H. Cambra, also known as Leanne H. Adams, Defendant.**

**No. 25478.**

Intermediate Court of Appeals of Hawai'i.

Sept. 8, 2005.

Certiorari Granted Oct. 18, 2005.

Daniel H. Shimizu, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellant.

Brian A. Costa, (on amended answering brief) and Valerie A. Vargo, (on answering brief), on the briefs, for Defendant–Appellee.

BURNS, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by NAKAMURA, J.

At about 9:30 in the morning on July 29, 2002, Honolulu Police Department (HPD) Sergeant David Yomes (Sergeant Yomes) was on patrol in the Salt Lake area. As Sergeant Yomes drove past a residence on Ala Lehua Street, he saw a black Acura car parked in the driveway with its front facing the street. Defendant–Appellee Shanelle Maganis (Maganis or Defendant) was in the passenger seat and Leanne Cambra (Cambra) was in the driver's seat. Sergeant Yomes continued on his patrol to a nearby district park, then circled back to Ala Lehua Street and drove past the same residence. Sergeant Yomes saw Cambra step out of the Acura appearing to dry her hair with a towel while Maganis remained in the car. Sergeant Yomes decided to "run" the front license plate number to see if the Acura was stolen because "certain street characters" with prior arrests were known to frequent the residence where the Acura was parked.

A short time later, Sergeant Yomes learned through HPD dispatch that the Acura had been reported stolen. He returned to the Ala Lehua Street residence and parked

his car, blocking the Acura. After requesting assistance from nearby units, Sergeant Yomes located Maganis and Cambra, who were now sitting on chairs behind the Acura. Officers responded to the scene and Sergeant Yomes had them detain Maganis and Cambra. Both women were cooperative.

Sergent Yomes proceeded to question Dale Nojima (Nojima), who had just emerged from the house. Sergeant Yomes asked Nojima if he knew the two women. Nojima stated that he knew one of them, identifying Maganis as the woman he knew. Nojima stated that earlier that morning he saw the other woman, Cambra, reversing the Acura into his driveway.

Sergeant Yomes noticed that efforts had been made to change the car's identity. The front license plate, which had been issued to the Acura, was different from the rear plate. Sergeant Yomes found the license plate matching the front plate on the floorboard of the front passenger seat. He also discovered that the ignition was "punched," in that the area "where you put your key to start the ignition" was damaged. Sergeant Yomes subsequently arrested Cambra and Maganis.

Maganis waived her constitutional rights later that evening and denied driving the Acura. But the following day, after failing a polygraph examination and again waiving her rights, Maganis gave a tape-recorded statement in which Maganis admitted that she and Cambra took turns driving the Acura, knowing that it had been stolen. Maganis denied any involvement in stealing the car or in changing the rear license plate.

## I. TRIAL COURT PROCEEDINGS

The State of Hawai'i (the State) filed an Amended Complaint charging Cambra in Count I and Maganis in Count II with Unauthorized Control of a Propelled Vehicle (UCPV), in violation of Hawaii Revised Statutes (HRS) § 708–836 (Supp.2004). That statute provides in relevant part:

A person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent or by changing the identity of the vehicle without the owner's consent.

Maganis moved to dismiss Count II on the ground that her arrest for UCPV was made without probable cause. Cambra's attempt to join in Maganis's motion was denied by the trial court and Cambra subsequently pleaded guilty to Count I.

Sergeant Yomes was the sole witness at the hearing on Maganis's motion to dismiss. Sergeant Yomes testified to the previously described facts, except that he did not refer to Maganis's post-arrest statements.[1] Sergeant Yomes also testified that the crime of UCPV can be committed in two different ways—either by operating the stolen vehicle or changing its identity. He explained that the bases for his arrest of Maganis and Cambra were that they "were actually in a vehicle that was reported stolen a week earlier ... and also the identity of this particular stolen vehicle was changed."

Sergeant Yomes acknowledged that at the time of Maganis's arrest, he had no information that she had actually operated the Acura or had been the one who changed the rear plate. Sergeant Yomes also conceded that one of the reasons for Maganis's arrest was the HPD's "policy that everyone in the [stolen] vehicle gets arrested for [UCPV]." Sergeant Yomes, however, described the following evidence, which "put together" made him believe he had probable cause to arrest Maganis: 1) Cambra and Maganis were sitting in a car that had been reported stolen; 2) the ignition was punched; 3) the rear license plate on the car was different from the front license plate; and 4) the rear license plate that should have been

1. The State of Hawai'i (the State) attached a transcript of the recorded statement in which Defendant–Appellee Shanelle Maganis (Maganis or Defendant) admitted to driving the stolen Acura, knowing it had been stolen, as an exhibit to the State's memorandum in opposition to Maganis's motion to dismiss Count II. The State submitted its memorandum in opposition "in addition to any evidence and argument adduced at the hearing." The State, however, did not move the transcript in evidence at the hearing.

on the car "was on the front passenger seat [2] where [Maganis] was sitting." [3]

The trial court [4] granted Maganis's motion to dismiss, concluding that Sergeant Yomes lacked probable cause to arrest Maganis and that Maganis's confession must be suppressed as the fruit of the unlawful arrest. The court issued "Findings of Fact, Conclusions of Law and Order Granting Defendant Shanelle Maganis's Motion to Dismiss Count II of Complaint" (the Dismissal Order), which provided in relevant part as follows:

## FINDINGS OF FACT

1. HPD Sergeant David Yomes arrested Defendant for unauthorized control of propelled vehicle on July 29, 2002 at [an Ala Lehua Street address].

2. Sergeant Yomes did not have any evidence that Defendant had operated the stolen vehicle at the time he arrested her.

3. Neither Sergeant Yomes, nor homeowner Dale Nojima, in whose driveway the stolen vehicle was parked, saw Defendant operate the vehicle.

4. Sergeant Yomes testified that, prior to arresting Defendant, he conducted an investigation of the vehicle. Sergeant Yomes noticed that the ignition had been punched. Sergeant Yomes also determined that the license plate on the front differed from the license plate on the rear of the vehicle. The license plate which had been issued for the vehicle, and which should have been attached to the rear of the vehicle, was located on the floor of the front passenger side of the vehicle where Defendant had been seated. The Court finds the testimony of Sergeant Yomes to be credible.

5. Sergeant Yomes admitted that he [sic] no information that Defendant had oper-

ated the vehicle, and testified that Defendant was arrested for unauthorized control of propelled vehicle because "HPD policy is to arrest everyone in the vehicle."

6. The State failed to elicit any testimony that Defendant's subsequent inculpatory statement on July 30, 2002 was not the product of the initial unlawful arrest.

Based upon these Findings of Fact, the Court makes the following Conclusions of Law.

## CONCLUSIONS OF LAW

1. When HPD Dispatch reported that the vehicle bearing license plate GJD 515 had been reported stolen, there was sufficient basis for Sergeant Yomes to conduct an investigatory stop. *State v. Madamba,* 62 Haw. 453 [617 P.2d 76] (1980).

2. Sergeant Yomes did not have sufficient probable cause for a valid arrest of Defendant for unauthorized control of propelled vehicle. HRS § 708–836; *State v. Naeole,* 80 Hawai'i 419, 424 [910 P.2d 732] (1996); *State v. Chong,* 52 Haw. 226, 231 [473 P.2d 567] (1970).

3. The information that the vehicle's ignition had been punched, that the rear license plate had been changed, and that the license plate which had been issued for the vehicle (and which should have been attached to the rear of the vehicle), was located on the floor of the front passenger side of the vehicle where Defendant had been seated did not provide sufficient probable cause to arrest Defendant on the alternate grounds that Defendant had changed the identity of the vehicle without the owner's consent. *See,* HRS § 803–5(b).

*State v. Chong,* 52 Haw. 226, 231, 473 P.2d 567, 571 (1970). Checks and other paperwork belonging to numerous other individuals were also found in the car along with a screwdriver on the driver's side floorboard. The record is not clear whether these items were discovered before or after Maganis's arrest.

2. We presume Sergeant David Yomes (Sergeant Yomes) meant that the rear license plate was on the floorboard of the front passenger seat as he had previously testified.

3. After Maganis was arrested, a bag containing eleven cellular telephones and four chargers were found in the Acura. Because this evidence was discovered post-arrest, it could not be used to establish probable cause for Maganis's arrest.

4. The Honorable Reynaldo D. Graulty presided.

4. Defendant's confession must be suppressed as the "fruit of the poisonous tree". *See, State v. Poaipuni,* 98 Hawai'i 387 [49 P.3d 353] (2002); *State v. Medeiros,* 4 Haw.App. 248, 251 [665 P.2d 181] (1983).

Based upon these Findings of Fact and Conclusions of Law, the Court makes the following Order.

ORDER GRANTING DEFENDANT SHANELLE MAGANIS'S *MOTION TO DISMISS COUNT II OF COMPLAINT*

IT IS HEREBY ORDERED that Defendant Shanelle Maganis's Motion to Dismiss Count II of Complaint, be, and hereby is, GRANTED.

## II. APPELLATE ISSUE

The State appeals from the Dismissal Order filed on October 18, 2002, in the Circuit Court of the First Circuit (circuit court). On appeal, the State argues that Sergeant Yomes had probable cause to arrest Maganis and therefore the circuit court erred in suppressing her confession and dismissing the complaint against her. We agree and reverse.

## III. DISCUSSION

### A.

Probable cause is required for a valid arrest under both the United States and Hawai'i Constitutions. *State v. Navas,* 81 Hawai'i 113, 115–16, 913 P.2d 39, 41–42 (1996). The United States Supreme Court has described the probable cause standard as follows:

The long-prevailing standard of probable cause protects citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime, while giving fair leeway for enforcing the law in the community's protection. On many occasions, we have reiterated that the probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause

is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

*Maryland v. Pringle,* 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (internal citations, quotations, and brackets omitted).

■ For probable cause to arrest, there must be more than a bare suspicion or possibility that the defendant committed a crime. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Mitchell,* 167 Wis.2d 672, 482 N.W.2d 364, 367–68 (1992). The probable cause standard, however, is less demanding than proof beyond a reasonable doubt, *State v. Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967), or even proof by a preponderance of the evidence. *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Mitchell,* 482 N.W.2d at 367–68. Probable cause does not require proof that that the defendant's guilt is more likely than not. *Mitchell,* 482 N.W.2d at 367–68; *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion). Rather, probable cause is established

when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

HRS § 803–5(b) (1993); *e.g., State v. Chong,* 52 Haw. 226, 231, 473 P.2d 567, 571 (1970); *Brinegar,* 338 U.S. at 175–76, 69 S.Ct. 1302.

■ Probable cause is typically based on a combination of factors that form an evidentiary mosaic in which the pieces of evidence, when viewed individually, may be lacking, but when viewed as a whole, reveal the existence of probable cause. *Chong,* 52 Haw. at 231, 473 P.2d at 571. The probable cause determination is based on the totality of the circumstances. *Pringle,* 540 U.S. at 371, 124 S.Ct. 795; *State v. Ferrer,* 95 Hawai'i 409, 431, 23 P.3d 744, 766 (App.2001). Among the relevant circumstances for the court to consider are the training and experience of the investigating police officers. *See*

*State v. Naeole,* 80 Hawai'i 419, 424, 910 P.2d 732, 737 (1996); *State v. Delmondo,* 54 Haw. 552, 554, 512 P.2d 551, 553 (1973); *Chong,* 52 Haw. at 232, 473 P.2d at 571. We review the trial court's determination of probable cause *de novo. Ferrer,* 95 Hawai'i at 430, 23 P.3d at 765.

 Sergeant Yomes arrested Maganis for UCPV which can be committed by intentionally or knowingly operating a vehicle without the owner's consent or changing the vehicle's identity without the owner's consent. HRS § 708–836. In addition, a person can commit the UCPV offense either as a principal or as an accomplice. HRS § 702–221 (1993).[5] Under HRS § 702–222(1)(b) (1993), an accomplice is defined to include a person, who, "[w]ith the intention of promoting or facilitating the commission of [an] offense[,] . . . [a]ids or agrees or attempts to aid [another] person in planning or committing it[.]" Thus, Sergeant Yomes's arrest of Maganis was valid if he had probable cause to believe that Maganis had 1) knowingly operated the Acura without the owner's consent; 2) knowingly changed the Acura's identity without the owner's consent; or 3) acted as Cambra's accomplice in committing the UCPV offense.[6]

We conclude that Sergeant Yomes, whose testimony the circuit court found was credible, had probable cause to arrest Maganis. Prior to arresting Maganis, Sergeant Yomes knew that Maganis and Cambra were sitting in an Acura that had been reported stolen

the week before. The punched ignition provided strong evidence that both women knew that the car had been stolen. Nojima's statement that he saw Cambra drive the Acura into Nojima's driveway established probable cause that Cambra had operated the Acura in violation of the UCPV statute.

Particularly significant was Nojima's statement that he was acquainted with Maganis but not Cambra. This created a reasonable inference that Maganis had participated in the decision to park the stolen car at Nojima's residence and was assisting Cambra in committing the UCPV offense. Maganis's continued association with Cambra even after the Acura was parked provided further evidence that Maganis was not merely present but was a joint participant in Cambra's criminal activity. Maganis remained in the parked Acura when Cambra emerged from the car and appeared to be drying her hair with a towel. When Sergeant Yomes later returned to the residence to investigate, he found both women sitting in chairs behind the car.

In addition, Sergeant Yomes discovered that the Acura's rear license plate had been replaced with a false plate. The removed rear plate was found on the floorboard of the front passenger seat where Maganis had been sitting. It was reasonable for Sergeant Yomes to infer that the close proximity of Maganis to the removed plate tied her to the unlawful changing of the Acura's identity. When viewed in the context of the "factual

---

5. Hawaii Revised Statutes (HRS) § 702–221 (1993) provides in relevant part:

§ 702–221 **Liability for conduct of another.** (1) A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(2) A person is legally accountable for the conduct of another person when:

. . . .

(c) He is an accomplice of such other person in the commission of the offense.

6. In its Amended Complaint, the State only charged Maganis under the operating-the-vehicle prong and not the changing-the-vehicle's-identity prong of the Unauthorized Control of a Propelled Vehicle (UCPV) statute. Maganis's attempt to use the State's charging decision to limit our probable cause determination to the operating-the-vehicle prong of the UCPV statute is misguided. Sergeant Yomes testified that he considered

both prongs of the UCPV statute in deciding to arrest Maganis, and the trial court addressed both prongs in its probable cause analysis. The State presumably limited its charge to the operating-the-vehicle prong because Maganis, in her post-arrest confession, admitted to driving the stolen Acura but denied changing the rear license plate. But more importantly, an arrest is valid even if probable cause is lacking for the offense articulated by the arresting officer as long as there is probable cause for a related offense. *See State v. Bolosan,* 78 Hawai'i 86, 92–95, 890 P.2d 673, 679–82 (1995). It therefore follows that in evaluating the validity of Maganis's arrest, we appropriately consider whether there was probable cause that Maganis violated either prong of the UCPV statute as a principal or as an accomplice or whether there was probable cause that Maganis violated a related offense.

and practical considerations of everyday life on which reasonable and prudent men ... act," *Pringle*, 540 U.S. at 370, 124 S.Ct. 795, we conclude that Sergeant Yomes had probable cause to believe that Maganis had committed the crime of UCPV either as a principal or as an accomplice to Cambra.

### B.

Our conclusion is supported by the recent, unanimous United States Supreme Court decision in *Maryland v. Pringle*, 540 U.S. at 366, 124 S.Ct. 795. In *Pringle*, a police officer stopped a car for speeding. *Id.* at 368, 124 S.Ct. 795. The car was occupied by three men: the driver, the back-seat passenger, and respondent Joseph Pringle (Pringle), who was the front-seat passenger. *Id.* Based on the driver's consent, the police searched the car and recovered $763 in cash from the glove compartment and five glassine baggies containing cocaine concealed behind the upright back-seat armrest. *Id.* When none of the three occupants admitted to ownership of the cocaine or money, the police arrested them all. *Id.* at 368–69, 124 S.Ct. 795. Pringle later confessed that the cocaine belonged to him and that he intended to sell the cocaine or use it to obtain sex. *Id.* at 369, 124 S.Ct. 795.

Based on these facts, the United States Supreme Court held that there was probable cause to arrest Pringle as well as the other two occupants of the car for possession of cocaine.

We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

*Id.* at 372, 124 S.Ct. 795. Accordingly, the Supreme Court reversed the Maryland Court of Appeals which had held that Pringle's confession must be suppressed as the fruit of an unlawful arrest. *Id.* at 374, 124 S.Ct. 795.

The Supreme Court specifically rejected Pringle's attempt to characterize his arrest as one of guilt by association. *Id.* at 372, 124 S.Ct. 795. The Court acknowledged that in *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), it had stated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." [7] The Court, however, explained that the evidence in Pringle's case showed more than his mere propinquity to others suspected of criminal activity.

This case is quite different from *Ybarra*. Pringle and his two companions were in a relatively small automobile, not a public tavern. In *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), we noted that "a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* at 304–305, 119 S.Ct. 1297. Here we think it was reasonable for the officer to infer a common enterprise among the three men. The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.

*Pringle*, 540 U.S. at 373, 124 S.Ct. 795 (parallel citations omitted).

As in *Pringle*, it was reasonable for Sergeant Yomes to infer a common enterprise

---

7. In *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), officers executed a warrant to search a tavern and its bartender for evidence of drug possession. The officers conducted pat-down searches of all the customers who happened to be present in the tavern, including Ybarra, and an officer found heroin inside a cigarette pack taken from Ybarra's pants pocket. *Id.* at 88–89, 100 S.Ct. 338. The United States Supreme Court ruled that "a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* at 91, 100 S.Ct. 338. The Court concluded that the heroin had been unlawfully obtained because the search warrant did not permit body searches of all the tavern's patrons and the initial pat-down search of Ybarra could not be justified as a permissible frisk for weapons. *Id.* at 91–93, 100 S.Ct. 338.

between Maganis and Cambra involving the stolen Acura. The information known to Sergeant Yomes established more than Maganis's mere presence. Maganis and Cambra had been sitting in a stolen car that Cambra had been seen driving. The car was parked in the driveway of Maganis's acquaintance with both a punched ignition and a removed rear license plate in plain view. It is unlikely that Cambra would have included Maganis in Cambra's criminal activities or that Maganis would have continued her association with Cambra unless Maganis was a knowing and active participant in the UCPV crime.

## IV. CONCLUSION

We hold that Sergeant Yomes had probable cause to arrest Maganis for UCPV, that Maganis's post-arrest confession was not suppressible as the fruit of an unlawful arrest, and that the circuit court erred in dismissing Count II of the Amended Complaint. We reverse the circuit court's order dismissing Count II of the Amended Complaint and remand the case for further proceedings consistent with this opinion.